JOHN ADOLPH, Respondent, *v.* THE· CENTRAL PARK, NORTH AND EAST RIVER RAILROAD COMPANY, Appellant.

*It seems,* that a traveler upon a common public street or highway is not bound to give way for another, traveling in the same direction, who desires to go by him, if there be room on either hand for the other to pass without way being given.

He is only bound to yield the way enough for one behind him to pass, when it is practicable and he is requested so to do, and when, by keeping in his place, he will prevent the one desiring to drive faster from going by.

He is not bound, therefore, to look back or to listen for the coming of another so as to make clear the way for him.

*It seems,* also, that a traveler upon a highway which is intersected by the track of a steam railway has simply a right to cross such track, not to pass along it. The engine and cars of the railway corporation have the exclusive right to the track as a whole, and the first right to its use at the place of intersection; and it is the duty of the traveler, on drawing near to a crossing, to look each way along the track, to listen for the coming of a train, and, when sure that it is prudent to cross, to hasten over.

A traveler upon a street on which is a street railway has a right to drive upon and along the railway, as well as to cross it at the intersection of streets; but he is bound to make way for the cars, and to be ready to do this when necessary, so as to cause no unnecessary hindrance.

It is his duty, therefore, not only to turn off from the track when called upon by a servant of the railway company, but to listen to whatever signal there may be from an approaching car; and he should also look behind him from time to time, so that he may, if a car is near, turn off and allow it to pass without hindrance or undue slackening of ordinary speed. (ANDREWS, EARL and DANFORTH, JJ., dissenting.)

A reasonable and lawful speed for a street car, in the absence of statute or ordinance upon the subject, is the average rate of carriages used to convey passengers by horse power.

(Argued February 13, 1879; decided April 1, 1879.)

APPEAL from judgment of the General Term of the Superior Court of the city of New York, affirming a judgment in favor of plaintiff, entered upon a verdict. (Reported below, 11 J. & S., 199.)

This action was brought to recover damages for injuries alleged to have been received because of negligence of defend-

ant's employe.    It is reported upon a former appeal in 65 N. Y., 554.

Plaintiff's evidence tendered to show that, at the time of the injury complained of, he was driving a one-horse wagon heavily loaded northward upon the track of defendant's road on avenue A, in the city of New York, a car came up behind him going at an unusual rate of speed so that the horses were not under the complete control of the driver.    On the east side of the avenue there was a stone-yard, and large stones were lying in the street between the railway track and the curb.    Plaintiff heard a call, and looked back ; the car was then from thirty to fifty feet off.    Plaintiff immediately turned off to the west, but before his wagon cleared the track the rear of it was struck by the car, the wagon was upset and plaintiff injured.    A policeman, seeing that the wagon could not get off the track in time, ran into the street and called to the car driver to hold on.

Defendant's counsel moved for a dismissal of the complaint, which was denied, and said counsel duly excepted.

The further proceedings upon the trial, so far as material, are stated sufficiently in the opinion.

*A. J. Vanderpoel*, for appellant.    No negligence was shown on the part of the defendant.    (Laws 1860, p. 1033.) Plaintiff was guilty of neligence contributing to the injury. (*Hegan* v. *Eighth Ave. R. R. Co.*, 15 N. Y., 380, 382; *Craig* v. *Rochester R. R. Co.*, 39 id., 404, 410, 411.) Plaintiff, under the circumstances, was bound to exercise care and diligence, and keep a look out for a car approaching in the rear.    (*Baker* v. *Savage*, 45 N. Y., 191; *Weber* v. *N. Y. C. and H. R. R.*, 58 id., 451; *Gorton* v. *E. R. R. Co.*, 45 id., 660; *Baxter* v. *Troy and B. Co.*, 41 id., 502; *Hart* v. *Central Co.*, 42 id., 472; *Griffen* v. *N. Y. C. R. R. Co.*, 40 id., 34; *Wilcox* v. *Rome, etc., R. R. Co.*, 39 id., 358; *Wild* v. *H. R. R. R. Co.*, 29 id., 315; *Bunn* v. *Delaware R. R. Co.*, 6 Hun, 303; *Warner* v. *N. Y. C. R. R. Co.*, 44 N. Y., 465, 470; 80 Mass., 69, 77–80.)    When a

proper request to charge is made by a party at a trial, he is entitled to have it charged without qualifying or refining it so as to lose its effect and force. (*Wild* v. *Hudson R. R. Co.*, 24 N. Y., 430, 442; *Warner* v. *N. Y. C. R. R. Co.*, 54 id., 465, 470; *Meyer* v. *Clark*, 45 id., 285, 289.) As between plaintiff and defendant, the former had no right to be on the track, when his being there obstructed the due and proper progress of the car. (*Comm.* v. *Temple*, 14 Gray [80 Mass.], 69, 77–80.) Plaintiff having driven on the track in front of the car was bound to use extraordinary care and diligence. (*Barker* v. *Savage*, 45 N. Y., 191, 194; *Eaton* v. *Erie R'y*, 51 id., 544, 551; *Willbrand* v. *Eighth Ave. R. R.*, 3 Bosw., 314; *Snydam* v. *Grand St., etc., R. R. Co.*, 41 Barb., 337; *Whittaker* v. *Eighth Ave. R. R. Co.*, 51 N. Y., 295, 929; *Hegan* v. *Eighth Ave. R. R. Co.*, 15 id., 380, 382; *Belton* v. *Baxter*, 14 Abb. [N. S.], 404; *Pluckwell* v. *Wilson*, 5 C. & P. 375 [24 E. C. L. R.]; *Simonson* v. *Steltenerft*, 1 Edmonds, 194; *Austin* v. *N. J. Stm. Co.*, 43 N. Y., 75, 80.)

*M. L. Townsend*, for respondent. If plaintiff used ordinary care he could not be deemed to have contributed to the injury. (*Hegan* v. *Eighth Ave. R. R. Co.*, 15 N. Y., 382; *Center* v. *Finney*, 17 Barb., 94, 97; *Eakin* v. *Brown*, 1 E. D. S. R., 36.) Defendant was not entitled to the unrestricted use of its rails for the progress of its cars. (*Baxter* v. *Second Ave. R. R.*, 3 Rob., 511–516; *Hegan* v. *Eighth Ave. R. R.*, 15 N. Y., 382; *Fettritch* v. *Dickinson*, 22 How., 248.) The judge erred in charging that if the collision occurred because plaintiff was on the track, he could not recover, although defendant's conductor and driver were negligent. (*Center* v. *Finney*, 17 Barb., 94, 97; *Eakin* v. *Brown*, 1 E. D. S. R., 36.)

FOLGER, J. We are of the opinion, that there was matter for the jury, upon the question, of the negligence of the defendant's servant, and that of the contributory negligence

of the plaintiff. It is not needful to add anything on these heads, to what was said by EARL, C., when this case was last in this court; (65 N. Y., 554.) The testimony is not so changed on the new trial as to make that saying now inapplicable.

We do not think that there was error, in taking the testimony of what was lying on the ground, on the east side of the avenue. If thereby the plaintiff was stopped from going off the railway track on that side, the question of his negligence, was narrowed to his acts or omissions upon the side to which he did turn.

The requests to charge, and the exceptions growing thereout, may not be so curtly dealt with.

There are three classes of ways used for travel, upon which, to a greater or less extent, every one has a right to be, with his own team and carriage. There is the common highway or street; there is the horse railway, laid in the street of a city, town or village; and there is the railway of greater length, through the land, along which cars are hauled by the power of steam. The right of any one to be upon either of these ways is different in its nature and extent; and the duty which one, while on it, owes to others is different; and the duty in the use grows greater, as the right to use gets smaller. Each individual of the entire public, as a general rule and in the absence of especial regulation by law, has as good right to be upon the common street or highway as any other individual thereof; yet each must use this right in a reasonable manner, so as to give a like reasonable use to every other. The rights are equal, and the duties in the use thereof are equally great and pressing. Each must look out for meeting another; and by turning out in time, on such hand, and so far as the law has prescribed, take care to avoid doing harm. One person may choose to go at a slow pace along the way, and has a right so to go. Another may choose to go at a faster pace, and has a right so to go. Yet each must exercise his right, so as not unnecessarily to abridge the use by the other of his right. The one choosing to go

fast may turn out and go past the one choosing to go slow, but must keep clear of him in doing it. The one choosing to go slow may keep in the beaten track, and is not bound to give way for the other to pass, if there be room on either hand for the other to go by, without way being given; nor is he bound to give way, where there is not space for him so to do, or it may not be done safely. He has the first right of way, under such circumstances, over so much space of road as his team and vehicle cover at the moment. Hence, he is not bound to look back, or to listen for the coming of another, so as to make clear the way before him. But if, by keeping in his place, he will stop the faster driver from passing, when, by turning aside, without meeting obstruction or danger in doing so, he could give way for passage, he is bound to do so, on being asked to. His duty is summed up, in keeping on his way, avoiding collision with those whom he meets, and in yielding way enough for those behind him to pass, when it is needful and practicable so to do, and he is thereunto requested. His duty has its measure of extent, from the measure of his right upon the road, which is fully equal to that of any one else using it.

The right of every one of the public to be upon the track of what we will call a steam railway, is much more restricted. For the purposes of this case, it may be said to be confined to crossing over that track, where it intersects any of the common streets or highways, and not at all to passing along it, in the direction in which it is laid. It has been held that the engine and car of the railway corporation has the exclusive right to the track as a whole, and the first right to the use of the track at the place of intersection; and that it is the duty of the person drawing near to a crossing, to look each way along the track, and to listen, for the coming of an engine and train. He is not privileged to wait for a signal or request from the driver of the engine, before he sets about to leave the passage clear along the track. As he is also on a common highway, he has likewise upon him the duties of a traveler thereupon, to avoid doing harm to other

like travelers.   Besides this, he has scarcely any other duty, at that juncture, than to keep entirely off the track, save at the crossing, and there to take care, with all his senses and all his powers, that he do not get in the way of a coming engine and train.   He may not stop on it, if a stoppage may be possibly avoided.   He may not waste time in crossing.   He must be as sure as he may be from sight and hearing, that it is prudent to cross at that moment, and then he must hasten over.   The reason of this, springs from the nature, purpose and conditions of travel, upon railways where steam is the motor.   The private person has a very limited right upon the railway track.   The railway corporation has the exclusive ownership and right of the track, save at the crossings of highways, and in streets.   The public requirements are for a high rate of speed, to be attained only with powerful engines incapable of being quickly stopped or controlled.   There is an overweening necessity for an absolutely clear track, and a sole and exclusive use of it, the whole time.   So, for the public use and the good of the greater number, individual right is of necessity somewhat abridged, and a higher degree of care and attention is exacted from the member of the community then acting singly.

The street railway, used with cars drawn by horses, holds a place between the two other classes.   One of the public, has a right to drive his team and vehicle upon the track of such a railway, and to pass along it lengthwise of it, as well as to cross it at the intersection of streets.   As others of the public have the same right, he owes to them the same duty, when about to meet, which he does when on an ordinary highway or street.   So that he must, some of the time, keep his senses upon what is in front of him.   But his and their right to be on the track and passing along it, is abridged from what it would be on a highway.   Hence, his duty is enlarged.   The railway company has the exclusive right to any part of the track over which, at the time, its horses and car are passing or just about to pass, and all others then upon it there, are bound to leave it, then and there, to the

unrestricted use of the company. This right to the use of so much of the public street, modified from both that to the highway and to the steam railway crossing, is because the car can move to and fro only on the parallel lines of rail laid for it, and cannot turn from them; so that others must get out of its way; yet it may not move over the rails, at a rate of speed faster than that ordinarily reached by horses drawing loads of passengers, while the motive power is under such control, as easily to be slackened in speed, and quickly stopped entirely; so that others may also use the track, without risk of harm, if all concerned are ordinarily prudent and careful.

While it is seen that one upon such a track, does not owe so strict a duty, as one about to go upon the track of a steam railway, because his right is larger; yet it is also seen, that he owes a greater duty than one passing along a common highway or street, because his right is smaller. The track is susceptible of a common use, so far as that, when the horses and car of the company are not upon it at any place, it may be there occupied with a team and carriage of ordinary kind, and there be but little danger of harm to any party. Yet, as the power to make the track clear for the corporate use, is solely with the individual temporarily occupying it, and as his right to use it is only when it is clear, there is upon him the duty of clearing it; and as it is essential to the convenient and useful working of the corporate property, that there be no unnecessary stoppage of regular transit, at a rate of speed continuously kept up, it is incumbent upon him that he cause no unnecessary hindrance thereto. This duty is, in the degree of it, just as pressing as that upon the person about to cross a steam railway; and the duty is to be performed, so far as it presses, just as actively. The car cannot turn off the track to go by. He can turn off the track to let it go by. He must do this. He must be ready to do it, when the need arises. The need is not exceptional, as in the case of a driver on the highway as above stated, so that the existence of the exception should

by signal alone be brought to the notice of the driver. The need is so constant and so imminent, from the nature and requirements of a street railway, as that it may be, and ought to be, always expected. So that the driver of the common vehicle, should be in constant expectation of the coming of a car, with a constant feeling that he will be at once required to do his duty of leaving the track. Therefore it is due from him, not only that he should turn off from the track when called upon to do so by a servant of the company, but that he should be more active than that, in learning a necessity for getting out of the way of a coming car. To this end, he should listen for whatever signal there may be, either of tinkle of bell or cry of driver; and he should also, while from time to time looking forward to see that his way is clear before him, look behind him from time to time, to see whether he should not soon turn off, so that a car may pass without hindrance or undue slackening of ordinary speed. And if to look back, asks that he turn round his body or his head, that he must do. His right is not so large and perfect upon the track, as it is upon the street surface upon each side thereof. His use of the track, is liable to a lawful interruption from a party having the right to an unobstructed way, which right it is exercising for the public good in part. It may move over the rails at a reasonable and lawful speed. A reasonable speed is the average rate of carriages used to convey passengers by horse power; and that is a lawful speed, in the absence of statute or ordinance on the subject. It also, must use the care of a person of common prudence and caution, heightened by the greater power it has to cause harm if not carefully used. He is bound to keep out of the way when the need, under such circumstances, arises that he should. Hence, there is upon him the duty of learning, when the need has arisen, or is likely to arise; and as it is a duty actively to be performed, he is bound to use all the ordinary means of learning; and all his natural senses are surely a part of those means, and to be used in such way as that they will bring information to him. So that he may

not wait to hear a signal of the approach of a car, but he must at intervals look backward for it. He is enjoying a right liable to frequent interruption. It is a condition of his enjoyment of it, that he make no needless delay. He should use his senses to effect that result.

If these rules have not been kept in sight, in the trial of this cause, there has been error.

Requests to charge were made and in terms or practically refused, which put forth the idea, that the plaintiff should have looked back to see whether a car was coming. Some of the requests, presented the idea in terms not open to objection as to the frame of them. We think that the fifth and the eighth did.

The court, in its charge, had instructed the jury, that it was plaintiff's duty to give that attention to the situation of things behind him, that might be called for from a man of ordinary intelligence ; while at the same time he was doing his other duty, in looking ahead of him and on both sides ; that is, that it was not his positive duty to keep a look-out behind at all times, because it was sometimes his duty to look ahead and on each side, but that he was to give some attention to it, and such attention as the jury thought should be reasonably given, under those circumstances. The court did in this, it may be, by implication, recognize that it was the duty of the plaintiff to keep a look-out behind, some of the time ; and had there been no other saying to the jury, the instruction might be held to be sufficient. Was it so understood by the jury ? It is not easy for me to say that it was, or that the court meant to be so understood ; for at another stage of the instructions, the court said that the plaintiff was not bound to turn around, but must give some attention to the approach of a car in the rear. If it was needful, to see behind, that he should turn around, then, as I have shown, he should have turned around so that he might see ; and as it is not easy to perceive how he could see behind, without turning around and looking back, it is not easy to perceive that the court meant that the jury

should take from it the idea, that he must look back to see. It particularly said that he need not turn around. Having laid down that negative, the general affirmation, that he must give some attention to the situation of things behind him, would not include that way to sight, and would take in, only other means of giving attention than turning around to do it. I think that the jury hardly went to their room, comprehending the court as meaning, that it was the plaintiff's duty to use his eyesight to learn of the nearness of a car behind him; and that they must have understood the phrase, "some attention," to mean some other way of learning its approach than by voluntarily looking back. The charge, as a whole, did not hold the rule that the plaintiff was bound to look back for a car. The court did refuse to so charge. It was due to the case, that such instruction, if asked for, should have been given; for it was material, upon the question of the negligence of the plaintiff, whether he did at all, or to what extent, use his faculty of sight to learn of the coming of the car. In this regard, I think that there was error, and that the judgment should be reversed and a new trial granted, with costs to abide the event. But my brethren do not all agree with me in this result; though a majority of them concur in the legal propositions, from which I have deduced this conclusion. One of the majority, the Chief Judge, is of the opinion, that the court did substantially so instruct the jury; and his views on that point are put in writing.

Church, Ch. J. I concur with the opinion of Judge Folger, except as to the construction of the charge. I do not think that the trial judge intended to charge that the plaintiff was not bound to look back to see whether cars were approaching, but the substance of the charge is that he was not bound to look back all the time, as he must look ahead and on the side, and pay proper attention to his own horses, but that he was under obligation to pay attention to approaching cars from behind, by looking back, and other-

wise, to such an extent as would constitute the exercise of reasonable care. The expression in answer to one of the requests that he was not bound to turn around, was intended I think to refer to the manner of looking back, as it is immediately followed by the remark that he must pay some attention to approaching cars, and this construction is confirmed by the original charge that he was not required to look back all the time.

We have held that while a person approaching a railroad crossing is required to look both ways for an approaching train, yet that he is not required as matter of law to stop his team, and stand up in his vehicle for the purpose of looking.

It may be true that the expressions on this point are not perfectly explicit, but I do not think that the jury could have given them any other construction than the one here indicated.

The judgment should therefore be affirmed.

RAPALLO and MILLER, JJ., concur with FOLGER, J.

ANDREWS, EARL and DANFORTH, JJ. dissent from the main part of the opinion of FOLGER, J., and were for affirmance.

Judgment affirmed.