## BOLL *v.* ADIRONDACK R. CO.

*(Supreme Court, General Term, Third Department.    March 16, 1889.)*

RAILROAD COMPANIES—INJURIES TO PERSONS ON TRACK—PROVINCE OF JURY.

   Plaintiff, a woman, was riding alone towards defendant's railway crossing, and, according to her testimony, she looked both ways for trains, and, seeing none, rode on, and was struck by a hand-car, and injured.    The foreman in charge of the car testified that he saw plaintiff at some distance, and she was apparently looking at the car; that he might have stopped the car; and that it was moving at about five miles per hour.    The view of the track from the road was somewhat obstructed. *Held*, that the questions of the negligence of defendant's servants and of plaintiff's contributory negligence were for the jury.

Appeal from circuit court, Saratoga county.

Action by Helen Boll against the Adirondack Railroad Company, for personal injuries.    Judgment for plaintiff, and defendant appeals.

Argued before LEARNED, P. J., and LANDON and INGALLS, JJ.

*Hale, Cowen & Bulkley,* for appellant.    *Pond & Brackett,* for respondent.

INGALLS, J.    On the 24th day of July, 1888, the plaintiff was returning to her home from Saratoga Springs by the public highway.    She was riding alone in a carriage drawn by one horse, which she was driving, and de-

v.4N.Y.S.no.9—49

scended a considerable of a hill, which extended nearly to the crossing of the defendant's railway. When nearly over such crossing the carriage was struck by a hand-car running upon the track of the defendant's road, in charge of the defendant's servants, and the carriage was turned over, and the plaintiff was thrown out and injured. The plaintiff testified in her own behalf upon the trial, and, among other things, stated as follows: "I reside in the town of Greenfield, with my husband, John Boll. Have resided there about twenty-three years. Am about half a mile, or a little over, from the track of the Adirondack Railway Company; about three miles by the road from the village of Saratoga Springs. In coming home from the village I come by John Braham's and others', and by Judge Hilton's park. I remember the day I was thrown out of my carriage; it was the 24th day of July, 1888. I had been to Saratoga on business; had a horse shod, and got some groceries. Started from home about two o'clock; started to come home about five o'clock. Went by Hilton's park. Heard the noise of the train about a mile from home. Just before I got to Daniel's place I heard a noise, and heard a whistle, and saw the train going to Saratoga on the Adirondack track. Saw it away from the village,—from Boll's crossing. It had passed by where I was hurt. I passed on, going home. There I turned up to the right around corner. You go at right angles. I think Daniel's corner is less than a mile from the crossing where I was thrown out. When I came up near the railroad, I looked at the track up and down, and didn't see nothing, and passed on. When I looked up and down, I was down below that little hill in the hollow. The hollow is a kind of a turn; a low place. It is near to Hilton's fence. There is a bend in the track where you went from the west fence, almost to the east fence; that is, before you come to the railroad track. I stopped in that hollow. I remember where the road bends from that point to go nearly across. It bends in that hollow; that is, the hollow where I looked. When I got in that hollow, I looked both ways, and didn't see anything, and didn't hear anything, and then I passed on. I listened; looked both ways; I looked to the left on the railroad track, and then to right on the railroad track. It was before six o'clock,—pretty near six o'clock. I had seen the train go down. I don't know whether there was any other train due about that time. That was always the last passenger train. I don't know of any other. After I had looked both ways, and listened, at the little hollow, I passed right on. I didn't see anything when I looked on the track, either way. I didn't hear anything as I passed on. Was going on just a good walk. My horse was walking; he didn't trot; he walked right on; a good gait; he didn't walk fast. I couldn't tell how fast he was going. I had been over three-quarters of an hour coming from the village. Started from there pretty near five o'clock, and it was then pretty near six o'clock. I went along until I got to the middle of the track, and heard a noise, and turned my head, and saw a hand-car and two men with full power working it; and I saw I couldn't get back, and I struck the horse, and he went ahead. I thought, if I turned back, it might strike his feet; and after the horse went across I heard a shock, and that is all I know. I was thrown over to the right side, towards Hilton's fence. I had the lines in my hands when I got struck. I don't remember anything more after that. I was lying across the road next to the fence. I didn't know anything first, and the railroad boys came up and says to me: 'Woman, I thought you was killed. It is a wonder you was not killed.' The other men coming this way took the horse, and straightened the horse up; and I sat there a few minutes on the ground, and then I crawled up on my hands and feet, and they brushed me off."

The evidence shows that in descending the hill the view in the direction of the railway track was somewhat obstructed by trees, fence, and other objects. The witnesses differ in regard to the extent of such obstruction. The plaintiff stated that she listened, and looked in both directions along the track of

the railway, before she attempted to cross, and that she neither heard nor saw anything upon the track until the carriage was struck by the hand-car. The hand-car was running upon a down grade, and no force was applied by the men in charge to propel it. Michael Christopher, who was in the employment of the defendant, and upon this occasion had charge of the men and the work, testified: "On this occasion I was coming home to Saratoga after our day's work with the men. We had been at work that day about a mile north of the trestle-work north or west up the track from Saratoga. There were five men with me. They are here. I started from a point about a mile up the track. Went down over this trestle-work spoken of. I first saw this woman with a horse and wagon just over half way from the rise of the hill on the main road coming towards the railroad crossing. She was over half way down. I was sitting in front on the hand-car, with one of the men with me; feet hanging off the platform. Saw her when she was more than half way down the hill. Could see her plainly. It was broad daylight, a little before six o'clock,—about ten minutes before six. There was nothing at all to obstruct my view of the woman, as I was there on the hand-car. I couldn't tell at what rate she was driving. The horse was going about as slow as she wanted him to; a slow motion. I saw she looked, off and on, at us fellows, from the trestle-work. As near as I could judge, we were going about five miles an hour with the hand-car. There was no one working the handles there. It was a down grade. The handles hadn't been worked at all from the time we started. There was no need of it, because it was all down grade. It worked itself. The car went by its momentum. There was another man with me, sitting down, and two men in the rear; two men standing up. I shouted to Mrs. Boll before I came within fifty feet of her to hold on the horse, and let us go by. She was then as much as ten feet from the railroad crossing. It seems she didn't pay any attention to my call. She passed right along, and let the horse go. When we found she was going on the track, I hollered to the man that was on the brake, and told him to put on the brake as quick as he could, and he did it; did all we could to stop the car, and succeeded in stopping it, but not until after it hit the wagon." It appears that this witness first saw the plaintiff when about half way down the hill, and approaching the crossing, and according to his evidence the car was running at the rate of five miles an hour. The car is described as three feet high, eight feet long, and five feet wide, and the top of the platform was one foot and seven inches above the rail. It was, we think, for the jury to determine, in view of all the circumstances, whether an object upon the track of the size and form described, and proceeding at the speed stated, with no working of the machinery by the men, and consequently causing but little noise or motion, would be likely to attract the attention of a person traveling, as the plaintiff was, upon the highway. Even though she had seen the car at some distance, she might have supposed it was a stationary object, as it was running at such moderate speed, and the men not working the brakes, or making any motions calculated to attract attention. It was quite unlike a train of cars propelled by steam, which is well calculated to attract the attention of a person approaching the track of a railway by its size, noise, smoke, and signals. *Adolph* v. *Railroad Co.*, 76 N. Y. 530. Again, such hand-car ran on no schedule time, and would not probably be expected, even by a person who was familiar with this railway, as the plaintiff seems to have been. It is evident from the statements of the defendant's witnesses that the car was under control, so that it could have been stopped within a short distance; yet the superintendent in charge, with full knowledge that the plaintiff was approaching the crossing, made no effort even to check the speed, until within a moment of the collision. The only excuse rendered for not stopping the car in time was that the superintendent assumed that the plaintiff had discovered the car approaching, and would not attempt to cross the track before the car had passed.

It therefore appears that the servants of the defendant saw the plaintiff approaching the track without stopping her horse, and, instead of delaying the car until she had crossed the track, they took the risk, and proceeded, causing the injury of which the plaintiff complains. The plaintiff, according to her evidence, listened and looked up and down the track, to ascertain whether any car was approaching, and, discovering none, drove onto the track, and the collision occurred. It was the province of the jury to determine whether she was truthful in her statements, and whether, in view of all the circumstances, she exercised the degree of care and caution which could reasonably be required of her, so as to exempt her from a charge of contributory negligence. This case is peculiar in some of its features, and, regarding all the facts and circumstances, we conclude that it was proper to submit it to the jury for their determination, in regard to the charge of negligence on the part of the defendant, through the conduct of its servants, and also as to whether the plaintiff was chargeable with contributory negligence. And the jury having rendered their verdict in favor of the plaintiff, we do not feel called upon, in view of the facts, to reverse the judgment entered thereon. The charge of the learned justice seems to have been impartial, and to have presented to the jury the real questions involved in the controversy, and in a manner calculated to aid them in considering the case.

We have examined the exceptions taken by the defendant's counsel to the charge, and the refusal to charge by the court as requested by such counsel, and, considering such exceptions in the light of the entire charge, and regarding the peculiar features of the case, we discover no error which in our judgment could have prejudiced the defendant's case, or which calls for a new trial of the action. The judgment should be affirmed, with costs. All concur.