(Hamilton County Common Pleas, 1900.)

MARY A. LEWIS v. CINCINNATI STREET RY. CO.

---

In an action against an electric street railway company for personal injuries, the question of plaintiff's negligence in driving upon the track of defendant without stopping to look whether or not a car operated by electricity might bring about a collision, is for the jury.

A city ordinance providing that the schedule time for operating cars over an electric street railway shall not exceed ten miles an hour, is invalid as being unreasonable in allowing such cars to be run at any rate of speed provided the schedule time in going over the entire route does not exceed ten miles per hour.

Under the ordinances now in force in Cincinnati electric street cars may not be run at a greater rate of speed than six miles an hour.

HOLLISTER, J.

There were two points made by counsel for defendant in their argument at the hearing of their motion for a new trial. One was that the court erred in its charge to the jury, and in its refusal to give certain special charges on the subject of the duty of the plaintiff before and at the time driving with her horse and buggy upon the defendant's street railroad track.

The court was of opinion, at the trial, that the question whether or not the plaintiff's conduct in driving upon the track was negligence should be submitted to the jury; that no absolute rule could be laid down requiring one driving along a street upon which were street car tracks to either stop or look or listen before crossing over the track, or to look once or more times before going upon the tracks to ascertain whether or not a car operated by electricity might bring about a collision. The court still adheres to that view, and thinks that its action in charging the jury as it did and in refusing to charge as requested was correct.

The other ground for a new trial was that the court erred in charging the jury that the ordinance of the city regulating the speed of street cars in force at the time of the accident, limited their operation to six miles an hour.

The ordinance of February, 1879, art. I., section 18, Coppock, in Hertenstein's ordinances, provides that:

"No cars shall be drawn at a greater speed than six miles an hour."

Ordinance No. 4286, Henderson's ordinances, 113, passed October 25, 1889, provided for an extension of Route No. 7, the construction of an electric system of motive power along that route and upon a portion of Route No. 5, and fixed rates of speed on certain routes.

In Section 2 it is ordained:

"That the schedule time for operating cars over said Routes 5 and 7 and over all portions of said company's other street railroad routes over which any kind of motors or means of rapid transit are authorized to be used shall not exceed ten miles an hour. And art. I., section 18, of the general street railroad ordinances, passed February 7, 1879, or any provision of any other section relative to the speed at which each car shall be operated shall not be applicable to such routes."

On September 16, 1892, the board of legislation sought to repeal the ordinance of October 25, 1889, by pasing an ordinance expressly repealing it, and ordaining that:

"All rights, privileges and franchises granted to the Cincinnati Street Railway Company under and by virtue of said ordinance be and

the same are hereby forfeited and held for naught.

And the corporation counsel was directed to institute the necessary legal proceedings to enforce the provisions of the repealing ordinance.

In 1896 the board of administration, by resolution, revised the terms and conditions of all of the grants and franchises to the Cincinnati Street Railway Company, and, among other things, resolved that:

"All of 'he provisions of the general ordinance providing for the construction, operation and government of street railroads, passed February 7, 1879, and all other ordinances extending and providing for the operation of the roads of any of said companies, in so far as the same are consistent herewith, shall apply to and become and be a part of the terms and conditions of the grant hereby made."

It is assumed, for the purposes of this case, that it was impossible for the board of legislation to repeal, by its ordinance of 1892, the ordinance of 1889, in such a way as to effect any vested rights acquired under the former ordinance, and that the board could not, by ordinance work a forfeiture of those rights, although the company may not have run its cars as the ordinance required, and this, independent of the fact, that it does not appear that the corporation counsel took any steps to legally establish its forfeiture.

When it can not be doubted that the proper municipal authorities may, by the exercise of police power and in discharge of the duties of the trust for the public under which it has supervision of and care of the streets, from time to time, regulate the speed of cars and all other vehicles using the streets, yet it is assumed further that the object of the repealing ordinance was not to bring about a change of the rate of speed at which cars could legally be run, but was to effect only the rights or privileges or franchises granted in the ordinance of 1889, and that, as it was invalid in respect to its real object, any incidentally declared purpose was ineffectual also.

These assumptions leave the provision of the ordinance of 1889, fixing the schedule rate of speed at ten miles an hour, in force unless there is some good reason why that ordinance is not operative.

It will be observed that the speed per mile is not limited to a maximum of ten miles per hour. The ordinance permits a schedule time of ten miles an hour. That is, the total number of miles in the route over which the car is operated shall not be covered in a less time than ten miles an hour. Under such a provision the car might be run at a much greater speed over some portions of the road, and, in order to maintain the average, would necessarily at some places be operated at perhaps twice ten miles an hour. It will be noticed that the ordinance makes no difference in its requirements between the portions of the routes which include streets comparatively unfrequented and those in which a condition of semi-blockade is often present.

The court assumes that it would be impossible to maintain a speed of ten miles an hour in the crowded streets, during the ordinary business hours, unless pedestrians and drivers of vehicles should waive their rights in those portions of the streets in which the car tracks are found. The effect of this would be the abandonment of their rights in a portion of a large number of streets and the appropriation of that part by the street railway company.

Whatever may be the exigencies and necessities of modern rapid transit, the law has not yet donated to street railroad companies the use of any part of the streets to the exclusion of those whose rights in the streets were fixed long before cars operated in streets by animals, cables or electricity were heard of, and by virtue of whose rights alone the courts have permitted the use of the cars on fixed rails in the street as simply another method of using vehicles in the streets, not differing, in the underlying principles involved, from any other vehicle used for travel. Yet, under this ordinance, it is in the power of the company to operate its cars anywhere, on any of its routes, not only at ten miles an hour, but at any other greater speed which it chooses, and at any speed required by its schedule in making its round trips, limited only by the requirement that no schedule can be adopted for any route which will involve an average speed of over ten miles an hour.

It is beyond discussion that under this ordinance there is no limitation upon the speed at any point in a route, be it the most frequented inter sections of the most crowded streets in the city, or the open ways in the comparatively sparsely settled parts of the city, where the travel may not be greater than in many country roads.

There being no limitation, there is an implied permission to operate the cars at any speed, at any point on the route, so long, only, as the schedule speed for the entire route is not exceeded. The man at the motor has no authoritative guide of such a nature as to bring about a penalty on the company or himself if he fails to follow it, and is only governed by his own good sense and judgment in determining the rate of speed he shall use in the crowded streets of the city.

The ordinance has not, therefore, for its justification, the public welfare and safety, which alone would warrant legislative action regulating the speed of cars, but its only effect is to bring about a result exactly the reverse; and it permits a street railroad company, under color of an ordinance regulating the speed of its cars in order that public welfare may be conserved through its observance, to operate practicaly at such rate of speed as its agents may see fit to adopt.

The ordinance, therefore, fails of the purpose for which alone it could be passed, and it really sanctions that which it is its office, and only office, to prevent. It has no element of protection to the public in it, and is, therefore, not only unreasonable, but it is more than that; it is subversive of the rights of the people in the streets. Surely no ordinance can be permitted to stand which brings about such a result.

It is said, in Adolph v. Railroad Co., 76 N. Y., 530, that "A reasonable and lawful speed for a street car, in the absence of statute or ordinance upon the subject, is the average rate of carriages used to convey passengers by horse power."

The conduct of the owners of animals and vehicles in the use of the streets is prescribed by section 17 of the ordinance of September 3, 1856, Coppock & Hertenstein's ordinances, chapter 22, page 338.
"It shall be unlawful for any person * * * to ride. drive or lead any animal or animals faster than the rate of five miles per hour, or in a manner to endanger the body or property of any person. It shall be unlawful for any person to ride, drive or lead any animal or animals faster than a walk, or drive or cause to be driven any vehicle whatever while turning around a corner faster than a walk."

If there is no difference in principle between the rate at which a vehicle may be propelled in the city and the rate at which a street car may proceed, and if the rule laid down by Adolph v. Railroad Co. supra, be the true one, it would seem that the lawmaking power of the city had, prior to the ordinance of 1879, practically established the rate of speed at which a car might be operated. If the principle is the same, and vehicles generally should not proceed faster than five miles an hour through the crowded streets, there is apparently no reason why a street car should go any faster. If the test is public welfare and safety, there can be no reason why one kind of a vehicle should be operated more rapidly than any other. If the proper test is the needs of modern rapid transit, then it is not difficult to understand that such a rate would be wholly inadequate. But

the right of the public authorities to legislate on the question of speed only exists by reason of the fact that their police power is called into exercise for the protection of individuals and their property legally using the streets. And there can no authority be found, anywhere, so far as the court is advised, which would justify the passing of an ordinance which could only be operative as an exercise of police power only be operative as an exercise of police power, for the purpose of meeting the demands for rapid transit which the public at this day make upon those who furnish the means of public conveyance. The way to meet those demands is not to expose the citizen and his property to continual danger in the lawful use of the streets, but is to require the rapid transit company either to elevate its tracks or to establish a system of subways, both of which plans have been adopted in other cities of this country. While the streets are used by the pedestrians and the drivers of ordinary vehicles, there is no demand on the part of the public for rapid transit which will justify an ordinance making the use of the streets a constant menace to life, limb and property.

The ordinance of 1879 limits the rate at which cars shall be run to six miles an hour. At that time there were no cars propelled by electricity here; but if it was dangerous to cause horse cars to run at a greater speed than six miles an hour (and it was possible to run them by such means at a greater speed), no good reason appears why it is any less dangerous to run a car weighing sometimes as much as ten tons, operated by electricity, at a greater speed than that. Apparently, therefore, there is no reasonable ground for saying that the ordinance fixing the rate at six miles an hour, because it was passed in the time of horse cars, should not apply to the electric cars. If the question becomes one of weighing the safety and welfare of the public on the one hand, and the necessities and desires of the public for rapid transit on the other, the scales would certainly adjust themselves, in balancing, to the former alternative.

The court is constrained to hold that the ordinance of 1898 is void. And, as it is void, the only ordinance in force up to the resolution of 1892, and by it readopted, is the ordinance of 1879, prohibiting a greater rate of speed than six miles an hour.

The motion for a new trial is overruled.

E. W. Kittredge, J. W. Warrington and George Warrington, for the motion.

Prescott Smith, contra.