## J. Samuels & Bro., Inc., *vs.* Rhode Island Company.

### APRIL 4, 1917.

Present: Parkhurst, C. J., Sweetland, Vincent, and Baker, JJ.

*(1) Negligence. Street Railways.*

A horse and wagon was being driven on a car track in a city street. The night was dark, owing to the absence of all street lighting. The snow was gathered in great quantity in the roadway. The wagon was struck in the rear by a car of defendant; the horse freed itself and, running away, struck and damaged the automobile of plaintiff. There was testimony that the driver heard no warning and did not look behind, and there was a ladder extending a few feet back from the rear of the wagon. The wagon carried no lights, but the headlight of the car was lighted.

*Held*, that the circumstances imposed more than ordinary care upon those operating cars and other vehicles upon the street, and while there was little conflict in the testimony, the question of whether the collision resulted from the negligent and careless operation of the car by defendant's servant was properly submitted to the jury, and there was no error in denying defendant's motion for a direction.

*(2) Negligence. Street Railways. Concurring Negligence.*

On the above facts it was not error to refuse a charge that " it was the duty of the driver of the team to display one or more lights on his vehicle, visible both in front and in the rear, in accordance with cap. 1028, Pub. Laws, 1914," as the jury might have been mislead as to the real issue.

*(3) Negligence. Street Railways. Concurring Negligence.*

On the above facts, instructions that even if the driver of the wagon did violate the law as to displaying lights, but the negligence of the driver and the negligence of the railway company both concurred in causing the accident, plaintiff, if he saw fit, could hold the railway company alone responsible, but that the absence of lights on the team might be taken into consideration in determining the negligence of the motorman, was proper.

*(4) Negligence. Street Railways.*

On the above facts, instructions that the mere fact the car was not run so slowly that it could be stopped within the distance that the headlight threw light did not, as a matter of law, establish negligence, but the jury should consider that circumstance with the other evidence to determine the negligence of defendant, was proper.

*(5)  Negligence.  Street Railways.*

On the above facts, instructions that if the car was not being run at a negligent speed, and the motorman upon discovering the vehicle did all he could to check the speed and avert the accident, he was not guilty of negligence, was proper.

*(6) ˙ Negligence.  Street Railways.*

On the above facts, instructions that the driver of the team was not bound to look behind him all the time, but that his place was to look ahead, need not be considered in passing on defendant's exceptions, where the jury had been instructed that in order for plaintiff to recover they must find defendant guilty of negligence in causing injury to plaintiff, irrespective of whether or not the driver of the vehicle was also guilty of negligence contributing thereto.

*(7)  Negligence.  Street Railways.*

On the above facts, instructions that the burden was upon defendant to explain that the collision was not the result of negligence, and that if it did not explain satisfactorily the circumstances which freed it from the imputation of negligence the jury would be warranted in finding that it occurred through defendant's negligence, was proper.

TRESPASS ON THE CASE for negligence.  Heard on exceptions of defendant and overruled.

BAKER, J.  On the night of January 13, 1915, between half-past nine and ten o'clock, the plaintiff's automobile was being driven by an employee in a southerly direction on Broad Street, near Norwood Avenue, in the City of Cranston.  A runaway horse came along the street in a northerly direction, ran into the automobile, and damaged it to the amount (it is agreed) of $39.90.  Just before this occurrence the horse had been attached to a wagon, owned by a Mrs. McCarron, and driven by one John Nichols.  The team was used at the time to carry wire and the tools and implements of employees of the Narragansett Electric Lighting Company.  A severe storm had been in progress during the day, wires had been broken down, and on the evening in question all of the street lights were out and it was dark, "very dark," one witness said.  There had been quite a heavy fall of

snow, and the going was difficult. The two car tracks were cleared, thereby causing the snow to be gathered in greater quantity in the roadway. One witness says it might be two or three feet deep at the place of the accident. Nichols was driving the horse in the right-hand car track towards Providence, when his wagon was struck in the rear by a car of the defendant, by which collision he was thrown off into the snow, the horse was thrown down, which then freed himself from the wagon and ran away, with the result already described. The front axle of the wagon was broken. The driver heard no gong, no shouting, did not look behind and was not aware of the approach of the car till it hit the wagon. Among other things on the wagon was an extension ladder, which extended a few feet back of the rear of the wagon, two witnesses saying four or five feet, and one of them (the driver) in cross-examination, " between five and ten," and then said, " Yes, sir," to this question — " But the fact is, it extended about twelve or fifteen feet beyond the rear of the wagon, isn't that so? " The wagon carried no lights. Two of the employees of the Narragansett Electric Lighting Company were walking along on the sidewalk near the wagon, but some distance behind it. They heard no gong, but saw and heard the car and " hollered " at the motorman, when they saw that he was coming so close to the wagon. One of them says he " banged into the team " and threw the horse down. The motorman and conductor both say that there were no passengers on the car at the time of the accident. The former stated that the headlight of the car was lighted, as did also the two men on the sidewalk, one of whom said it was shining as bright as usual. The motorman gives this account of what happened: " I had stopped at a white pole at the street below to pick up some passengers. They didn't want to ride. Of course, I was not running at a very fast rate of speed, and the

first thing I noticed was what I supposed was the driver running from the sidewalk. I thought at that time that he wanted to board the car. I started to bring my car down and I noticed an object. Of course, I did not see the ladder projecting from the rear end, that is all we hit of the team, it was the ladder we hit," that the car went " possibly six feet after hitting the ladder." He says he was looking ahead, and was twelve or fifteen feet from the object when he first noticed it, and that at the time the car was going " five or six or seven miles an hour." The headlight shone on the track but he could not say how many feet ahead of the car the reflection extended. The conductor says that just before the accident they were going about twelve or fifteen miles an hour, and when they appeared to come to a stop, they were going about five or six miles an hour. He stood in the rear vestibule. He also says that after the accident, the tail end of the wagon was about three feet in front of the car, right on the track, and the ladder then extended about four feet out from the rear end of the wagon. He heard no " hollering " before the accident.

. At the trial of the case in the Superior Court the jury returned a verdict for the plaintiff for $39.90 and the case is here on defendant's bill of exceptions.

(1)   The exceptions pressed are five in number, namely, 1. The refusal of the justice presiding at the trial to direct a verdict for the defendant. This was a collision in a city street in which a wagon on the car track was run into from behind. The existing conditions were unusual owing to the absence of all street lighting on a dark evening, and the accumulation of snow in the streets outside of the car tracks. The circumstances imposed more than ordinary care upon those operating cars and other vehicles upon the street. While there is 'little conflict in the testimony, we think the question of whether the collision resulted from the negligent and careless.

operation of the car by defendant's servant was properly submitted to the jury and that there was no error in denying the motion. *Jenison* v. *R. I. Sub. Ry. Co.*, 67 Atl. 367; *Oliveira* v. *Rhode Island Co.*, 72 Atl. 817; *Pawtucket Baking Co.* v. *Rhode Island Co.*, 32 R. I. 517; *Galvin* v. *Rhode Island Co.*, 34 R. I. 283.

. 2. The defendant excepts to the court's refusal to charge the jury as follows: '' 1. Under the circumstances of time and place it was the duty of the driver of the team to display one or more lights on his vehicle, visible both in front and in the rear, in accordance with the provisions of Chapter 1028 of the Public Laws of 1914.'' While the judge did not read this request to the jury he did inform them that there was such a law, but instructed them that even if the driver did violate this law and was negligent in operating his vehicle, and at the same time the railroad company was guilty of negligence in running into the vehicle, and, therefore, both of them guilty of negligence, then the plaintiff could, if it saw fit, hold the company alone responsible. He had previously said, '' It would be simply a case, under those circumstances of an accident occurring through the concurring negligence of two parties, and in a case of that kind the party who receives the injury, if the concurring negligence, that is, if the negligence of each one is the proximate cause, and both concurred and neither one proximate to the other, but both concurring in causing the accident, then the party who is injured can maintain his action against either one or both.'' Vol. 21, Am. & Eng. Ency. of Law, 496. See, also, *Lee* v. *Union Railroad Co.*, 12 R. I. 383. The court did, however, instruct the jury that the fact that there was no light on the vehicle might be taken into consideration by them in determining whether or not the motorman was guilty of negligence in running into the wagon. We are of the opinion that it was not error to refuse to give the charge requested, as

the jury might easily have been misled thereby as to the real issue, and that the charge as given presented the matter in its proper light.

3.   The next exception is to the modification or explanation by the court of two requests to charge by the defendant.   The requests and the comments of the court (4) are given as they appear in the transcript, as follows:

" The Court:   The second I will give you and it is as follows:

' 2,   Under the circumstances of this case as to time and place it was not the duty of defendant's motorman to run his car so slowly as to be able to stop his car within the distance of the projection of the rays of the headlight of the car.'

" The Court:   I so charge you, that is, the mere fact that he did not run the car so slowly that it could be stopped within the distance that the rays of the headlight throw light, does not, as a matter of law, establish negligence, but you will find from all the evidence in this case whether or not that circumstance, taken in connection with all the other evidence in the case, whether or not the defendant was guilty of negligence in the matter.   Of course, the motorman is bound to take cognizance of the conditions that prevailed there at that time.   It was a dark night, snow was on the street, vehicles might reasonably be expected to pass back and forth and vehicles could not well pass along the street in the deep snow, and that therefore they might be very likely found moving along on the track, and all those things should be taken into consideration together with all the rest of the evidence in the case, as bearing upon the question of whether or not the defendant was guilty of negligence in this case."

" The third is granted and is as follows:

(5)   ' 3,   If defendant's motorman, after he saw the team upon the track, did everything in his power with the ap-

pliances at his command to stop the car, he was not guilty of negligence if he failed to stop it before colliding with the team.'

" The Court: Of course, if the person in charge of the car was guilty of no negligence at all but was running the car down àt the rate of five or six miles an hour at the time of the accident, and the only light was that of the headlight, and he was guilty of no negligence in that manner, and as soon as he discovered the presence of the vehicle he did all he could to check the speed of the car and avert the accident, he was guilty of no negligence and your verdict should be for the defendant. As I have already said, the plaintiff can only recover in case this car was operated in a negligent manner, and by reason of that negligence this accident occurred to the plaintiff's automobile by reason of the fact that the collision occurred, the horse pulling the vehicle was caused to run away and come in contact with the automobile of the plaintiff."

Request 2 is apparently based upon *Vizacchero* v. *Rhode Island Co.*, 26 R. I. 392. That was an accident " upon a sparsely-settled country road " in the night-time, and the court announced as applicable to the circumstances of that case the rule substantially embodied in this request. It is plainly implied in that case, however, that such rule is not applicable to all conditions.

We think the modifications or explanations accompanying these requests were sufficiently favorable to the defendant.

(6)    4. The next exception covers two matters and was taken as appears by the transcript as follows: " Will your Honor note my exception . . . to that portion of the charge that has to do with the duty of the person driving the team to look in the rear, and to that part of the charge, which has to do with the burden of proof shifting from the plaintiff to the defendant in cases where

a rear end collision is made out, the burden of proof to explain the occurrence of the accident?"

The duty of the driver as to looking behind him was referred to in the charge thus: "The person driving along the track is not bound to look behind him all the time, his place is to look ahead and see that he does not run into somebody there; he is not bound to ride backwards so as to watch the approaching car."

Some cases are cited by the defendant, in which it is held that the driver of a vehicle on a city street car track should "look behind him from time to time," among them *Adolph v. Central P. N. & E. River R. R. Co.*, 76 N. Y. 530. We do not deem it necessary, however, in this case to pass on the point thus attempted to be raised, for the reason that the court, as already stated, had very fully and clearly charged the jury that in order for the plaintiff to recover they must find the defendant guilty of negligence in causing the injury to plaintiff's automobile, irrespective of whether or not the driver was also guilty of negligence contributing thereto.

The defendant does not clearly point out the portion of the charge relating to the duty of the operator of a street car to explain why he ran into a vehicle proceeding along on the car track in front of the car. We presume that this may be the part objected to. "If a collision of that kind does occur, the burden is upon the defendant to explain in some way that the collision was not the result of negligence on the part of the one in charge of that car, and if they did not explain to your satisfaction the circumstances which freed them from the imputation of negligence by reason of that collision, you would be warranted in finding that the collision occurred by reason of the negligence of the defendant corporation."

The plantiff and defendant both cite *Fagan v. Rhode Island Co.*, 27 R. I. 51. That was a head-on collision at

midnight on a country road, in which a street car ran into a team on the car track going in the opposite direction. The driver of the team was asleep. The only testimony as to the cause of the accident was that of the motorman, who said that he saw ahead clear of the track what appeared to be a pair of horses followed by a covered wagon, that suddenly, when close to the car, the team turned in upon the track, and the collision could not then be avoided by him. We think the facts in the *Fagan* case and in the three other cases cited on this point by the defendant are not sufficiently like those in the case at bar as to render them in point. In the *Fagan* case, *supra,* this court, in speaking of the " implication of negligence " arising in certain circumstances, said: " If the collision had been with a team in a frequented city street, where care is always necessary to avoid collisions and where proper care will generally avoid them, the implication would arise that proper care had not been used and the burden would have been upon the company to show that it had not been negligent." See, also, *Vincent v. Norton & Taunton St. Railway,* 180 Mass. 104, 27 Am. & Eng. Ency. of Law, 71.

We think the instruction given was proper.

5. This exception was taken to the denial of defendant's motion for a new trial (a) because contrary to the evidence, (b) because contrary to the law. For reasons already indicated this exception is overruled.

We have examined all the cases cited in defendant's brief, but have not deemed it necessary to discuss them further than we have already done in this opinion.

The defendant's exceptions are all overruled and the case is remitted to the Superior Court for the entry of judgment on the verdict.

*Boss & Barnefield,* for plaintiff.
*Clifford Whipple, Earl A. Sweeney,* for defendant.