DAVIDSON, PLAINTIFF IN ERROR, v. DENVER TRAMWAY COMPANY, DEFENDANT IN ERROR.

1. STREETS—STREET RAILWAYS—RIGHT OF WAY.

A street railway occupies the highway subject to the common use not only of the balance of the road, but also of that part covered with tracks, by either pedestrian or the driver of a vehicle, yet the privilege of the former, while not exclusive, is generally held to be superior and preferential as against all other modes of locomotion along that part of the highway occupied by its tracks.

2. CONTRIBUTORY NEGLIGENCE.

A person crossing the line of a street car must exercise his senses in order to prevent accident and escape injury, and in case his failure so to do contributes directly to the injury, he will not be permitted to recover damages.

*Error to the District Court of Arapahoe County.*

Messrs. FELKER & DAYTON, for plaintiff in error.

Mr. JAMES H. BROWN and Mr. MILTON SMITH, for defendant in error.

BISSELL, P. J., delivered the opinion of the court.

An electric car operated by the Tramway Company collided with the wagon in which Davidson and his wife were riding, and did considerable damage to their persons and property. Davidson brought suit, but at the conclusion of his proof he was nonsuited, and has brought error to reverse the judgment. He was evidently nonsuited because of his negligence which contributed to the injury.

Only so much of the evidence will be stated as bears upon this single proposition, and is necessary to an easy apprehension of our conclusions respecting it. The Tramway Company operated an electric line out Broadway for several miles beyond the limits of Denver. That street runs due north and south, and at the point of the accident consists of a sin-

gle track with turn-outs or switches to enable the cars to pass each other. Davidson had lived at Petersburg for nearly a year prior to the accident, and was accustomed to drive to town several times a week. The streets crossing Broadway run at right angles to it, and this was true of Myrtle street, along which Davidson drove eastwardly on the morning of the 10th of April when he was hurt. In pursuing his journey, he crossed the railway track at the intersection of Myrtle and Broadway to the east side of the road, turned to the left and went north along the line to a point some two hundred and ten feet beyond Myrtle, where he attempted to cross the track to a store on the other side of the way. His course was some seven or eight feet distant from the track, and of course coincident with that of the car coming from the south which afterwards struck his vehicle. According to his testimony, when he crossed the track at Myrtle, he looked south and saw no car coming. As he turned and went north he saw a car on the switch about nine hundred feet from that point headed southward, and waiting for a car which was coming from the south headed in the opposite direction; but which, as he states, he did not see. He noticed the car on the switch, and evidently knew it was waiting for the car bound north to pass, which of necessity was coming behind him, running in the same direction that he was traveling. At this part of Broadway the road is comparatively level, and as Davidson testifies any one could see southward from Myrtle street, a distance of three quarters of a mile. There was a grocery store on the west side of Broadway, between Myrtle and the next street crossing Broadway to the north, at which Davidson and his wife were in the habit of trading. It would appear, although the evidence is not very clear upon this subject, that travel was somewhat common across Broadway at that point, and that the customers who drove on the eastwardly side of the road, at about the location of the grocery, crossed the track to do their trading. Davidson and his wife both testified that such was their custom, and on this particular morning they started to

cross the track and were run into by the car. They were driving in an open wagon between eight and nine o'clock in the morning, and neither was bundled up, nor had their ears covered. The morning was fair although somewhat cloudy; but there was nothing in the conditions of the weather to prevent these persons from either hearing or seeing the approaching car. Davidson says that, after he crossed the track at Myrtle, he noticed the car standing on the switch; but that when he turned to cross the road he neither listened nor looked back to discover whether a car was coming from the south. After they got on to the track, his wife looked, discovered the car almost on to them, when Davidson did the best he could to get out of the way, but failed and was injured. One of his witnesses testified that the car was coming along at the rate of ten or twelve miles an hour, while according to Davidson his horse was being driven in a sharp walk or slow trot at the rate of four or four and a half miles an hour. This is only important as bearing upon the degree of watchfulness or care which Davidson used at the time.

The great development of rapid surface transportation, and the almost universal appropriation of the streets of the cities and the roads running therefrom to the suburbs by the various cable and electric systems, has resulted in the springing up of a very large and increasing class of suits for personal damages, and in the development of a new body of the law which has been formed by the application of old rules to the new conditions, and the evolution of some relatively modern doctrines applicable to the use of streets and highways. The roads have always been the King's highway, along which all persons had an equal right to pass. The learning which has been expended in the settlement of the rights of the pedestrian, and the driver of a vehicle and their relative duties and obligations when passing or meeting upon the highway, has developed a most interesting branch of the law. In this action we are concerned with but a very slight element of it. The difference between the rights of steam railways and street railways is marked and unquestioned, although in

many respects somewhat similar.   The distinguishing differ-
ence is in the exclusiveness of the right of a steam railway
company to occupy its track as against all other persons or
modes of locomotion.   The street railway, however, occupies
the surface of the highwa  subject to the common use not
only of the balance of the road, but also of that part covered
with the tracks by either the pedestrian or the driver of a
vehicle.   The cases are not entirely agreed in their descrip-
tion of the easement enjoyed by the transportation company.
It is always conceded not to be exclusive, but is generally
held to be superior.   Whether or not this is an accurate de-
scription of their right, their privilege is undoubtedly a pref-
erential one as against all other modes of locomotion along
that part of the highway occupied by the track.   This con-
cession is absolutely essential to the preservation of the rights
conferred by their franchise, the development of the objects
for which they were organized, and for the great benefit of a·
very large proportion of the population of the cities which
must make use of it for the purposes of business and travel.
It is evident from the later decisions that the preferential use
of the lines of their track by cable and electric companies
closely proximates the right of exclusive use granted or con-
ceded to steam railways.   All the courts agree, however,
that there still remains with the pedestrian, the users of ve-
hicles and of horses, the old right which they always en-
joyed—to use all of the King's highway at their pleasure and
for their convenience.   It is only insisted that they shall
yield the track to the railway company, and shall keep out
of the way of the cars so far as may be possible, barring the
accidents of sudden emergency.   Neither of the rules which
has been the outgrowth of the litigation springing from acci-
dents happening along the line of steam railways has been,
save in a limited manner, applied to these rapid modes of
transit by cable and electricity.   It is pretty universally ad-
judged that before one can cross a steam railway, he is bound
to stop, look and listen to discover the approach of a train
before he shall be permitted to cross the track and escape the

responsibility of his own negligence if he fails in any of these particulars. While in a sense, and a very limited one at that, this rule has been applied to the acts of the pedestrian or the driver of a vehicle in crossing the transportation company's line, the difference between the steam railway and the electric or cable line must be borne in mind. The absence of the exclusive right to the occupancy of the street compels the distinction. The grant of a franchise to the company in no manner takes away from the other users of the highway their right to its entire occupation, save that their right to enjoy is limited by the contractual right of the transportation company, and its preferential privilege in the use of that part of the road occupied by the tracks. If the pedestrian or the driver of a vehicle were compelled to stop, look and listen before he crossed the tracks, it would be an unnecessary and an unusual burden and restriction upon his common law right to use the King's highway which still remains with him. Notwithstanding this exception, neither the pedestrian nor the driver of a vehicle may undertake to cross a track heedlessly and recklessly, and without the exercise of the greater care which he is bound to use in crossing the tracks of a company lawfully using powerful, rapid and dangerous modes of locomotion. There is some difference amongst the authorities in their expression of this principle. Pennsylvania lays it down as an absolute rule, that if one heedlessly makes the attempt to cross such a track, he is guilty of negligence *per se* which will absolutely bar his right of recovery. Other states hold the failure to look to the proof of negligence which will bar the recovery, where there is nothing in the case which would in any manner qualify this proof of negligence and leave a fairly debatable question open for the consideration of the jury. Others again, as in Minnesota, say that there is no hard and fast rule in a case of this description, and that a failure to look would not, as a matter of law, and regardless of circumstances, be treated as negligence. This case does not compel us to definitely and absolutely express our notions respecting this matter, although it is

very difficult to imagine circumstances which would excuse the injured party for his neglect to use his eyes as well as his ears to guard against an accident occurring while he is crossing the track.    *Ward v. Rochester Electric R'way Co.*, N. Y. Supp., vol. 17, p. 427 ; *Carson v. Federal Street, etc., R'way Co.*, 147 Pa. St. 219 ; *Ehrisman v. Harrisburg R'way Co.*, 150 Pa. St. 180 ; *Wood v. The Detroit City R'way Co.*, 52 Mich. 402 ; *McLain v. The Brooklyn City R'way Co.*, 116 N. Y. 459 ; *Dolan v. The Delaware & Hudson Canal Co.*, 71 N. Y. 285 ; *Pennsylvania R. R. Co. v. Righter*, 42 N. J. Law, 181 ; *Adolph v. The Central Park N. E. R'way Co.*, 76 N. Y. 530 ; *Shea v. The St. Paul City R'way Co.*, 52 N. West. 903 ; *Meyer v. The Lindell R'way Co.*, 6 Mo. App. 27 ; *Sheets v. The Connolly Street R'way Co.*, 24 Atlantic, 483 ; Beach on Contributory Negligence, §§ 251–289 *et seq. ;* Booth on Street Railway Law, § 316.

These cases all unite in holding that a person must use his senses in order to prevent accident and escape injury.    If the proof show that he failed to do either, and that this contributed directly to the injury, the law will be applied to the facts, and the plaintiff will not be permitted to recover.    The plaintiff's right to go to a jury upon the questions of fact concerning his negligence depends so much upon the question whether the matter is a debatable one, and whether the proof leaves room for different inferences in men's minds respecting his conduct, that he cannot complain of a nonsuit when he has been guilty of what the law says is negligence on his part. In a case of that sort there is nothing for a jury to determine and the court applies the law to the facts.    The present case comes directly within the rule.    Confessedly the plaintiff did not look to the south along which he was advised the car was approaching, and evidently neither he nor his wife used their ears or any of their senses to protect themselves against danger.    Davidson saw the car standing on the switch a few hundred feet distant waiting for one approaching from the south.    He had driven up and down the line of the road almost daily for ten months, and knew that these cars, propelled

with great force and much speed, went along the line at frequent and almost regular intervals. These circumstances and this knowledge advised him of the necessity to be on the alert and the lookout to see if the car was coming, before he crossed the track. Neither he nor his wife looked, and apparently neither of them heeded the sound of the approaching car. He turned upon the track without consideration, and a collision resulted from his negligence. It is not easy to reconcile his statement of his conduct at Myrtle street with reference to looking up and down the track with the evidence in the case. The proof was that the car was running at a speed of ten or twelve miles an hour; that from Myrtle street, southward, he could see three quarters of a mile; that he was going at the rate of four or four and a half miles an hour, and went from where he crossed at Myrtle street to a point some two hundred and ten feet distant where he attempted to cross to the grocery store, whither he was journeying. Either he was mistaken in regard to the fact concerning the approach of the car or else he was mistaken in stating that he looked. At the speed at which the car was traveling when he crossed Myrtle street, if it was not in sight for a distance of three quarters of a mile, the car would not have reached the point of accident within three minutes, while he would travel the distance between Myrtle and the point of crossing in about thirty-five seconds. This fact very greatly disturbs our confidence in the accuracy of his statement, that he looked southward along the line of the track when he crossed at Myrtle. This might not be conclusive, though it bears strongly upon the question whether he was reasonably attentive and prudent in his conduct. The railroad company cannot be chargeable with negligence for failing to slacken the speed of their car as they approached the crossing, for the driver was pursuing the same direction in which the car was going, and it is not to be supposed that the motorman could reasonably be expected to anticipate that the driver would change direction and cross in the middle of a block immediately in front of an approaching car. Davidson did not

look, and apparently did not use his ears, and crossing the track under such circumstances, his act must be deemed a negligent one, which contributed to the injury, and as a matter of law bars his recovery.

The nonsuit was right, and the judgment will be affirmed.

*Affirmed.*