# No. 14,533.

Denver Tramway Corporation et al. *v.* Perisho.

(97 P. [2d] 422)

Decided December 4, 1939.

Mr. W. A. ALEXANDER, Mr. CECIL M. DRAPER, Mr. DON-ALD B. ROBERTSON, Mr. ALLAN R. PHIPPS, Mr. GERALD HUGHES, of counsel, for plaintiffs in error.

Mr. MORRIS RIFKIN, Mr. MAX RIFKIN, for defendant in error.

*In Department.*

MR. JUSTICE KNOUS delivered the opinion of the court.

IN the district court on a jury trial, defendant in error, to whom we shall herein refer as plaintiff, recovered judgment against plaintiffs in error, hereinafter to be

designated as defendants, for damages to plaintiff's truck resulting from a collision between it and a streetcar owned and operated by defendant corporation. Upon the assertion that the evidence disclosed that defendants were guilty of no negligence and that plaintiff was guilty of contributory negligence, defendants assign error, to the refusal of the trial court to grant their motions for nonsuit, and a directed verdict. They contend that under the evidence the doctrine of last clear chance is not involved and that the court erred in instructing the jury on this doctrine. The accident occurred about nine o'clock on the morning of April 1, 1938, at the intersection of 4th avenue and High street in Denver. The streetcar was traveling in a westerly direction on 4th avenue. Plaintiff, driving the truck, which previously had been proceeding in a southerly direction on High street, at the moment of the collision was engaged in making a left-hand turn in the intersection so as to proceed easterly on 4th avenue. The left front corner of the streetcar struck the left side of the truck near the rear wheel thereof. The complaint alleges negligence in general terms, but a review of the evidence discloses that the acts of negligence upon which plaintiff relies consists: First. Failure of the operator of the streetcar to sound his gong. Second. Neglect to keep a proper lookout.

██ Under the facts disclosed by the record it may be doubted whether the omission of the motorman to sound the gong—upon which point the evidence is in conflict—if established, could be considered as independently and proximately being the cause of the subsequent collision, since plaintiff admits that upon nearing the intersection he saw the streetcar approaching some 100 feet away (70 to 80 feet east of the intersection). In this situation the sounding of the gong "could have told him nothing that was not in plain sight before him." *Globe Indemnity Co. v. Stenger,* 82 Colo. 47, 256 Pac. 658. However, testimony on this subject was admissible

and competent as disclosing the conditions, and conduct of the parties preceding the collision.

On the second point the evidence relating to the alleged negligence of the streetcar operator in failing to keep a proper lookout, as being the direct and proximate cause of the accident, was abundantly sufficient to take the case to the jury and warrant the verdict returned. Plaintiff and an employee who was riding with him in the cab of the truck, and two other witnesses who had stopped their respective automobiles at or near the intersection, testified that from the moment they observed the approach of the streetcar, at distances varying from 65 to 180 feet depending upon the place where they happened to be, to the instant immediately preceding the actual collision, the operator of the streetcar had his head down as if looking at something in his lap and did not once look up. One of these witnesses who had stopped his automobile a short distance west of the intersection, testified that he went so far as to sound his automobile horn to attract the streetcar operator's attention, but without avail. Another witness who had stopped her car on the High street side of the intersection, stated, "I stopped my car" and sat there "just holding my breath waiting to see when he would look up to see the truck." The employee in the cab of plaintiff's truck said, "I was fascinated watching this motorman with his head down on this big old streetcar." According to the testimony of a police officer the motorman admitted in an interview shortly after the accident that he did not observe the approach of the truck.

As controlling the rights of the parties at the time, defendants cite section 65 (e) of the ordinances of the city of Denver, providing as follows: "Street cars shall have the preferential right of way except as herein otherwise provided, but the person in charge thereof shall exercise proper care not to injure pedestrians, vehicles, the occupants or contents thereof, and the driver in control of any vehicle in front of a street car

shall immediately turn out on signal from the motorman or person in control of the street car, if possible to do so." Under this and similar ordinances we have uniformly held that a streetcar at a street intersection has the preferential right of way over a vehicle or pedestrian. *Davidson v. Denver Tramway Co.*, 4 Colo. App. 283, 35 Pac. 920; *Philbin v. Denver City Tramway Co.*, 36 Colo. 331, 85 Pac. 630; *Denver City Tramway Co. v. Gustafson*, 21 Colo. App. 478, 121 Pac. 1015. To the same effect are: *Denver City Tramway Co. v. Norton*, 141 Fed. 599; *Summers v. Denver Tramway Corp.*, 43 F. (2d) 286.

"While the street railroad company has this preferential right of way, it has no right to proceed upon the assumption that it may take no heed of the probability of encountering, at such crossings in a city, vehicles and the like, which have the right to use the crossing as a common highway. *The motorman, in control of the operation of his car, must at all times, in approaching such crossings, proceed with such care and caution as, while subserving the public in rapid transit, he can reduce to the minimum the danger to others entitled to its contemporaneous use.*" *Denver City Tramway Co. v. Norton, supra.* Logically, therefore, it cannot be contended that the circumstance that a streetcar is accorded such a preferential right of way, absolves the operator from negligence in approaching and entering an intersection, where it appears from the evidence that he is as oblivious to his surroundings as if he were blindfolded. All of the witnesses present at the scene of the accident, except the motorman and one passenger on the streetcar, testified that the streetcar, which was proceeding at a rate variously estimated from ten to twenty miles per hour, did not slacken its speed until the time of impact, or, at the most, an instant before. The motorman and one passenger on the streetcar said the brakes thereon were applied at some distance from the intersection and at the moment of the collision the car was

traveling at a speed of from two to three miles per hour. The consensus of opinion of all the witnesses present, including the motorman, was to the effect that after the collision the streetcar advanced from two to six feet. Counsel for defendants say if the streetcar, which weighed in excess of twenty tons, was proceeding at the rate of speed indicated by plaintiff's witnesses, that it would, after striking the truck, which weighed some five and a half tons, have proceeded a greater distance, and from this they argue that the physical facts disprove the truth of plaintiff's evidence. At the trial, not even the expert witness who testified for defendants upon other hypothetical matters, was asked to conjecture as to the speed of the streetcar before the collision upon the basis of the distance it proceeded thereafter, but, notwithstanding, by this formula we are urged judicially to nullify the testimony of disinterested eyewitnesses. Properly, we may not do this. "So frequently do unlooked-for results attend the meeting of interacting forces that courts should not indulge in arbitrary deductions from physical law and fact except where they appear to be so clear and irrefutable that no room is left for the entertainment, by reasonable minds, of any other." 20 Am. Jur., p. 1034, §1183. Considering all of the evidence, defendants syllogism does not contain the requisite certainty to warrant the application of the rule. The inferences arising from this circumstance, as well as the credibility of the witnesses, were matters to be considered and determined by the jury. The case at bar is not in the category of *McLennon v. Whitney-Steen Co.*, 63 Colo. 568, 167 Pac. 771, where testimony of the plaintiff to the effect that he looked into an elevator shaft but did not see a descending elevator, was considered as being discredited when it was certain that if he really had looked, in the very nature of things, he must have seen the elevator which was but a few feet above his head.

On the assertion of contributory negligence as a

matter of law precluding recovery by the plaintiffs, defendants rely: (1) Upon the failure of the plaintiff to yield to the streetcar the right of way accorded by section 65(e) of the ordinance; and, (2) charge that he made no reasonable attempt to avoid the collision after he was in the intersection. The circumstance that a collision did occur, in itself is not sufficient to establish, as a matter of law, that plaintiff's failure to yield the right of way was the proximate cause of the disaster. *Boyd v. Close*, 82 Colo. 150, 257 Pac. 1079.

"A person is not guilty of contributory negligence merely because he attempts to cross a street railway when a car is approaching; if that were so he could never attempt to cross such a track, in the crowded part of a city, where there is practically always an approaching car.

"In such case, negligence depends upon the proximity or remoteness of the car, its speed and all other circumstances surrounding the occurrence.

"It is not negligence per se for one to cross a street railway track in front of an approaching car which he has seen, and which is not dangerously near." *Philbin v. Denver City Tramway Co., supra.*

██ In the case at bar it is undisputed that plaintiff *looked* and *saw* the streetcar when it was some distance from the intersection. This circumstance renders inapplicable *Livingston v. Barney*, 62 Colo. 528, 163 Pac. 863, where plaintiff failed to look; *Gunby v. Colorado & Southern R. R. Co.*, 77 Colo. 225, 235 Pac. 566, and *Denver City Tramway Co. v. Cobb*, 164 Fed. 41, where, having looked, plaintiff negligently failed to observe. The question of whether plaintiff was guilty of contributory negligence, as alleged, depends upon whether, having observed the approach of the car, he acted as a reasonably prudent person would, under the attending circumstances, in entering the intersection. As we have mentioned, the fact that streetcars are given a preferential right of way at intersections does not justify a

motorman in crossing an intersection without regard to approaching vehicles. *Lung v. Washington Water Power Co.,* 144 Wash. 676, 258 Pac. 832; *Denver City Tramway Co. v. Norton, supra,* and *Philbin v. Denver City Tramway Co., supra.* In forming his judgment as to whether he had time to cross the tracks in safety, plaintiff had a right to assume that the motorman would exercise a reasonable degree of care under the then prevailing conditions. *Travelers'. Indemnity Co. v. Detroit United Railway,* 193 Mich. 375, 159 N. W. 528. The resolution of this question involves the consideration of the speed and shifting location of the vehicles, their mechanical characteristics, the width of the street and other variable factors covered by the evidence from which different inferences might be drawn and upon which reasonable men could well differ in their conclusions. Under these circumstances a court should not declare contributory negligence as a matter of law, and the trial court rightly submitted the question to the jury upon instructions which are unchallenged. *Publix Cab Co. v. Phillips,* 98 Colo. 542, 58 P. (2d) 486; *Denver City Tramway Co. v. Wright,* 47 Colo. 366, 107 Pac. 1074.

Likewise for determination by the jury was the question whether plaintiff failed to exercise ordinary care in his attempt to avoid the collision after entering the intersection. He testified that upon becoming aware that his presence was not observed by the motorman before reaching the center of 4th avenue, he turned his truck sharply to the left in an effort to get in the lane south of the streetcar and parallel thereto. By reason of the circumstance that while High street intersects 4th avenue it does not cross the latter which is solidly curbed on the south side thereof at this point, it was manifestly impossible for plaintiff to proceed straight ahead. Defendants, however, suggest, as plaintiff admits in the first instance might have been done, that he should have turned to the right to avoid the collision. Although plaintiff did not say so, such a maneuver likely would have

placed him in the path of a car which, as disclosed by the evidence, was at the moment proceeding easterly on 4th avenue. Under such conditions no court could rightly hold, as a matter of law, that the conduct of the plaintiff amounted to contributory negligence.

■ Defendants contend that the trial court erred in instructing the jury relative to the doctrine of last clear chance upon the theories: (1) That the negligence of the plaintiff was continuous and operative down to the moment of the impact; and, (2) that there was no showing that the motorman could have avoided the accident after plaintiff had reached a position of peril in front of the streetcar. In effect, our conclusion heretofore expressed that the question of plaintiff's negligence was for resolution by the jury, disposes of the first theory adversely to the defendants' contention, since to make it operative in their favor would require that the court determine as a matter of law that plaintiff was negligent and that his negligence continued to the instant of the collision. The case of *Denver City Tramway Co. v. Cobb, supra,* largely relied upon by the defendants on this point is premised on the latter assumption. In support of the second theory advanced, defendants argue that after plaintiff had reached the zone of peril, mechanically it would have been a physical impossibility for the motorman to have stopped the streetcar in time to have avoided the collision, citing, *Read v. Pacific Electric Ry. Co.,* 185 Cal. 520, 197 Pac. 791; *Mourning v. Kansas City Railways Co.,* 110 Kan. 417, 204 Pac. 721, and *Killian v. McCourt,* 69 Colo. 455, 194 Pac. 936. One fallacy in this argument rests upon the circumstance that to have avoided the collision a bringing of the car to a complete stop would have been unnecessary, as a perceptible reduction of its speed, whatever it was, would have accomplished the desired end. Further, the distance within which the car physically could have been slowed down or stopped depended directly upon the point at which the motorman observed the truck

and as a result thereof decelerated its speed by mechanical means. The evidence on this point is in direct conflict. It appears at one place in the motorman's testimony that he applied the brakes some sixty to seventy feet east of the intersection and at another, some forty-five feet from that point. At the speed he testified the car was being propelled, its minimum stopping distance was estimated by an expert witness at fifty-five to sixty feet. If the story of the motorman be accepted as true, of course the doctrine of last clear chance would not apply, since it is apparent that even though exercising the required care, he still could not have averted the accident. On the other hand, as has been mentioned, witnesses for plaintiff who saw the accident all testified that there was no perceptible slackening of the speed of the streetcar, at least in the last sixty-five feet it traveled previous to the collision. Manifestly this conflict presented a question for the jury, not for the court.

The judgment is affirmed.

MR. CHIEF JUSTICE HILLIARD and MR. JUSTICE YOUNG concur.