## No. 15,432.

WOODS, DOING BUSINESS AS DOLLAR CAB LINE ET AL.
*v.* SIEGRIST.

(149 P. [2d] 241)

Decided April 10, 1944.   Rehearing denied May 15, 1944.

Mr. JOHN F. MUELLER, Mr. MYRON H. BURNETT, for plaintiffs in error.

Mr. O. OTTO MOORE, for defendant in error.

*En Banc.*

MR. JUSTICE BAKKE delivered the opinion of the court.

THIS is an automobile accident case in which Irene Siegrist, defendant in error, plaintiff below, brought suit for damages resulting from alleged injuries suffered by her when the car she was driving collided with another driven by Brindley, one of the plaintiffs in error, an employee of the principal defendant in error, Woods, doing business as Dollar Cab Line. The action was tried by the court, sitting with a jury, which returned a verdict in favor of plaintiff in the amount of $2,250. Reversal is sought on a writ of error. We are asked to determine the matter on the application for supersedeas, and have elected to comply with the request. Reference will be made to the parties as they appeared below, or by name.

The pertinent facts are as follows: The accident occurred about six o'clock p.m., November 10, 1939, when plaintiff, accompanied by one of her children, was driving south on Cherokee street in the City of Denver; that she had entered the intersection of Cherokee street and

First Avenue, and was three-fifths of the way across when a taxicab driven by Brindley approaching at a rate of speed of about thirty-five miles an hour struck the right rear wheel of her car with such force that it was skidded to the southeast corner of the intersection, where it turned over and came to rest on its top against a third car, driven by one Lindquist, that had been proceeding north on Cherokee street. In this connection, Lindquist testified that when he was about fifty feet south of the intersection, "I saw a car approaching from the west, which was my left, traveling at a rather high speed * * * and I saw that I had no way of maintaining my right of way; so I began to slow up, and came to a full stop just before reaching the sidewalk line * * *. It was a zone taxicab." It appears from the record that following the collision the taxicab skidded for fifty feet; that the pavement was dry; that there are two street car tracks on First Avenue, and apparently a street car traveling west after crossing Cherokee street obscured plaintiff's vision so she did not see the taxicab until it was too late to avoid the accident. It also appears that there was a one-story building at the northwest corner of the intersection which contributed to plaintiff's inability to see the taxicab. Plaintiff testified inter alia: "As I got to the corner I naturally didn't notice any car. I looked to the right and then to the left and I didn't notice any car coming from either direction at the time near—that is, less than a block—and then I got—I know I was even with the sidewalk on the south side of the street when I noticed a white streak coming before me, and it startled me, and, as far as I can remember, it seems like I stepped on the accelerator to get out of the way; I figured I had just a little ways to get out of the way, and that is all I know; * * *."

Brindley's story was that he was driving at a lawful rate of speed, namely about twenty-five miles an hour, in his lane of traffic and that he saw a car (driven by the before-mentioned Lindquist) coming from his right;

that he reduced his speed and that when the Lindquist car stopped, he shifted into second gear and proceeded across the intersection; that he was within about the length of a car from plaintiff's auto before he saw it; that he immediately applied his brakes and turned his car to the right in an unsuccessful attempt to avoid the accident.

We think a fair inference would be that had Brindley turned his car to the left instead of to the right the accident would not have occurred, because it was the right front fender of defendant's car that hit the right rear wheel and bumper on the car driven by plaintiff.

That Brindley was aware that he could have avoided the accident appears from his testimony: "Q. You didn't apply your brakes until you saw her, did you? A. No, and I probably didn't apply my brakes as I saw her. Q. Then why did you apply your brakes and skid your wheels thirty-five feet before the point of impact? A. There is where you might have me, * * *."

Following the accident plaintiff and her child were removed from the car, and apparently they were not seriously injured, as the record discloses that after regaining her composure plaintiff carried the child home, a distance of about four blocks. Later, however, she complained of severe headaches, soreness in her chest and loss of memory at times. She testified that she was unable to continue her employment in a laundry; that she was unable to sleep normally and was highly nervous and excitable; that she had been, and still is, under the care of a chiropractor.

The court instructed the jury that the traffic ordinance of the City and County of Denver, in force and effect at the time and place of the accident involved in this case provided: "1. The speed limit on First Avenue as well as on Cherokee street was twenty-five miles per hour. 2. Every driver of a vehicle approaching the intersection of a street shall yield the right-of-way at such intersection to the driver of any vehicle approaching

from the right, and the driver of the vehicle on the left shall decrease the speed of the vehicle operated by him and have said vehicle under control before crossing such intersection, and it shall be his duty to yield the right of way to the vehicle on the right, except where traffic is controlled by traffic officers or traffic control signals. 3. Any person who drives any vehicle or operates any street car upon a street or upon highway carelessly and heedlessly in wilful or wanton disregard of the rights or safety of others at a speed or in a manner so as to endanger or be likely to endanger any person or property, shall be guilty of reckless driving. 4. Any driver or operator, while driving without lights at such times as lights are required under section 52 of this ordinance, or while driving to the left of the center of the street, and reckless driving, shall have no right of way whatsoever."

The pleadings raised the question of negligence, contributory negligence and last clear chance, and the jury was instructed on those issues.

The points urged for reversal are: 1. That the verdict was excessive. 2. That the court erred in allowing plaintiff to amend her complaint to include in her claim for recovery damages for loss of income. 3. Plaintiff was guilty of contributory negligence as a matter of law, and the court erred in denying the motion for nonsuit. 4. That the doctrine of last clear chance was not applicable to the facts in the case, and the court erred in giving an instruction relative to that subject.

1. The contention that the verdict of $2,250 is excessive is grounded upon the assumption that it is out of all proportion to the injury and damages proved. This assumption is based upon the medical testimony of two admittedly qualified neurologists, who did say that plaintiff's injuries were largely imaginary; but, on the other hand, plaintiff and her husband testified that her injuries were not only real, but that she did suffer from severe headaches, attributable to the brain injury, loss

of memory, and loss of normal functions and ability for several months; and a chiropractor who treated her, testified that there was a dislocation of the upper vertebra. Since no question is raised as to the competency of this latter testimony, and the jury chose to believe it, as we must assume it did, we cannot say that she did not suffer these physical and mental injuries, and, coupled with the loss of earnings over a two-year period we do not believe the verdict was so excessive as to indicate bias or prejudice on the part of the jury. *Campion v. Eakle,* 79 Colo. 320, 246 Pac. 280; *Riss & Co. v. Anderson,* 108 Colo. 78, 114 P. (2d) 278.

■ 2. Any prejudice resulting to defendants by the action of the trial court in allowing the amending of the complaint so as to include a claim for lost earnings, was cured by ·an offer of the court to continue the case for the purpose of according ample opportunity to defendants to refute plaintiff's testimony on the point. The defendants failed to avail themselves of this offer.

■ 3. We do not believe the record shows that plaintiff was guilty of contributory negligence as a matter of law. The principal case relied upon indicating that she might have been, is that of *Kracaw v. Micheletti,* 85 Colo. 384, 276 Pac. 333. Conceding that case to be authority for the proposition that a driver on the left who is involved in an auto accident has the burden of proving that he was not negligent, and that such proof was not made in that case, the closing paragraph of the opinion therein, sets forth circumstances which would require submission of the case to the jury. The resumé of the facts which we have set out shows that the plaintiff in the instant case is within our holding in *Boyd v. Close,* 82 Colo. 150, 257 Pac. 1079, in which the plaintiff "was handicapped by the night, the lights, the location of the cars, and falling snow." In the case at bar, plaintiff was handicapped "by the night, the lights, the location of the cars," a blind corner and a passing street car. Plaintiff testified that she did slow her car down at the

intersection and did look to the right and left. The fact that she did not see the taxicab approaching did not necessarily preclude a judgment in her favor. It was proper to submit the question to the jury. In *Stocker v. Newcomb,* 91 Colo. 479, 15 P. (2d) 975, we reversed a judgment in which the trial court had directed a verdict for defendant in a case in which the facts were similar to those here presented.

4. We think this case one in which the rule of last clear chance may properly be applied. Most of defendants' principal brief on the subject is based on the theory that the doctrine was not pleaded, and they accordingly strongly rely upon the case of *Bragdon v. Hexter,* 86 Colo. 435, 282 Pac. 568. However, counsel acknowledge in their reply brief that it was pleaded in the replication, but insist that the doctrine is not applicable for the reason that plaintiff's alleged contributory negligence continued down to the moment of impact. This is not supported by the record as a matter of law. Assuming that she was negligent in entering the intersection, she could no longer be charged with negligence when she found herself in a situation of imminent peril from which it was impossible for her to extricate herself. *Grunsfeld v. Yetter,* 100 Colo. 570, 69 P. (2d) 309, and cases therein cited. It is argued that the same principle protects the defendants in this case. However, the record discloses that Brindley was aware of his predicament, and that he had time to, and did, change the direction of his car. As already recited, it was the rear right wheel and bumper of plaintiff's car that was struck by the right front bumper and fender of the taxicab, and the jury was justified in finding that had Brindley turned to the left there would have been no collision; that he had the last clear chance to avoid the accident, and that his failure in this regard was the proximate cause of the accident. "It is what the defendant did or failed to do after the plaintiff was imperiled that constitutes the breach of duty for which the defendant is

held liable under the rule of last clear chance." 38 Am. Jur. 904, §218.

█ In *Independent Lumber Co. v. Leatherwood,* 102 Colo. 460, 79 P. (2d) 1052, we said, after quoting section 479, Restatement of the Law — Torts: "Section 479 correctly states the rule of last clear chance as applied in Colorado to situations in which a plaintiff's failure to exercise ordinary care for his own safety brings him into a position of peril from which he cannot extricate himself, but one such that ordinary care on the part of a defendant, after the dangerous situation arises, would save plaintiff from harm." The facts of the case at bar bring it within the rule.

Since counsels' objection to instructions 1 and 14 goes to their alleged inapplicability, rather than to their form and substance, and having reached the conclusion that they are applicable, we need not consider them further.

█ There is much conflict in the evidence on the vital points in the case, and as to the most vital, i.e., Brindley's last clear chance to avoid the accident after plaintiff was in peril, we are satisfied the evidence was sufficient to warrant its submission to the jury. See, *Denver Tramway Corp. v. Perisho,* 105 Colo. 280, 97 P. (2d) 422. Finally, on this question, we note that when counsel for defendants . discovered that the pleadings presented the issue, they failed to cite any authority in their reply brief sustaining the contentions, simply re-iterating evidence that is, at best, conflicting.

Judgment affirmed.

Mr. Justice Knous, Mr. Justice Hilliard and Mr. Justice Goudy dissent.