## No. 16,073.

### LAMBRECHT *v.* ARCHIBALD.
(203 P. [2d] 897)

Decided February 21, 1949. Rehearing denied March 14, 1949.

Messrs. JANUARY & YEGGE, MARGARET R. BATES, for plaintiff in error.

Messrs. WOLVINGTON & WORMWOOD, Mr. FORREST C. O'DELL, for defendant in error.

*En Banc.*

MR. JUSTICE ALTER delivered the opinion of the court.

THEO A. ARCHIBALD, the widow of William H. Archibald, brought an action to recover damages which she sustained by reason of the death of her husband occasioned by his being struck by an automobile allegedly negligently operated by Raymond Lambrecht. Upon

trial to a jury, it returned a verdict in plaintiff's favor in the sum of $4,500, upon which verdict judgment was entered. Defendant seeks a reversal here by writ of error.

Plaintiff in her complaint charged defendant with the negligent and careless operation of his automobile, resulting in striking her husband, inflicting injuries resulting in his death, and prayed for damages in the sum of $5,000. Defendant, by his answer, denied negligence as pled in the complaint, and, for a first affirmative defense, alleged that the injuries and death were proximately caused by decedent's sole negligence; for a second affirmative defense he pled contributory negligence, and, for a third affirmative defense pled unavoidable accident. In the reply counsel set out the last clear chance doctrine.

The evidence was in hopeless conflict, but so much thereof as was undisputed is substantially as follows:

The accident which resulted in the death of plaintiff's husband occurred at or near the intersection of South Broadway and Wesley avenue, in the city of Denver, on the evening of May 10, 1947, at or about 7:15 P. M. A heavy rainstorm seriously interfered with visibility and made the pavement wet and slippery. Defendant was driving a panel delivery truck in a northerly direction on South Broadway, and decedent was crossing South Broadway from the westerly to the easterly side thereof. He was returning to his home, about the middle of the block on the easterly side of South Broadway, from a grocery store on the southwest corner of South Broadway and Wesley avenue, where he had gone to purchase a loaf of bread. At the point in question South Broadway is sixty feet in width, and there are separate street car tracks on it for south and north-bound tram cars. It is not a through street. Defendant was driving between the north-bound tracks at the time of the accident. There were automobiles parked on the easterly side of South Broadway between Wesley avenue and the street im-

mediately to the north. At the time of the accident the bright lights were burning on defendant's automobile, his brakes were in good condition, and his windshield wiper was being used. After the accident decedent was found lying in the street and near the north-bound car tracks therein at about one hundred feet north of the northerly crosswalk at the intersection. As a result of the impact the left headlight on defendant's car was broken and the left front fender and radiator dented.

Decedent had been an employee of the state of Colorado at a monthly salary of $137.10, and at the time of his death was eighty-one years of age, with a life expectancy of 4.04 years. He was the sole support of plaintiff.

As to the visibility and the speed at which his automobile was being driven, defendant testified that on account of weather conditions his least visibility was twenty feet and that while looking straight ahead he did not see decedent until his car struck him. He further testified as to the rate of speed he was traveling at the time of the accident: "I thought I was going about 25 miles an hour, it might have been 30, it might have been 20, at night like that you couldn't tell, it would probably be 20, not more than 30." And he further admitted that at the coroner's inquest he testified he was traveling twenty-five to thirty miles an hour.

The following portions of the municipal traffic code of the City and County of Denver were offered and admitted in evidence without objection:

"Section 15 (a) The operator of any vehicle shall yield the right-of-way to a pedestrian crossing the roadway within any marked crosswalk or within any unmarked crosswalk at the end of a block, except at intersections where the movement of traffic is being regulated by police officers or traffic control signals or at any point where a pedestrian tunnel or overhead crossing has been provided.

"(b) Whenever any vehicle has stopped at a marked

crosswalk or at any intersection to permit a pedestrian to cross the roadway, it shall be unlawful for the operator of any vehicle approaching from the rear to overtake and pass such stopped vehicle.

"(c) It shall be unlawful for a pedestrian to cross a roadway at any point other than within a marked or unmarked crosswalk, on any street designated as a Thru Street, or on any street where the parking of motor vehicles is limited to one or two hours, as herein provided by this Ordinance. On other roadways within the City and County of Denver, a pedestrian crossing such roadway at any point other than within a marked or unmarked crosswalk shall yield the right-of-way to vehicles upon the roadway, provided that this provision shall not relieve the driver of a vehicle from the duty to exercise due care for the safety of pedestrians."

"Section 57. 1. (Careless Driving) Every person operating a vehicle on the streets or highways in the City and County of Denver shall drive the same in a careful and prudent manner, having regard for the width, grade, curves, corners, traffic and use of these streets, and all other attendant circumstances so as not to endanger the life, limb or property of any person.

"2. (Speeding) Driving in excess of the following speeds shall not be considered careful and prudent driving:

\* \* \*

"(d) Twenty-five (25) miles per hour in residence and all other districts except as herein provided."

"Section 52 (d) Adequate Brakes—Every motor vehicle shall be provided with adequate brakes in good working order, sufficient to control such motor vehicle at all times, and the brakes of such motor vehicle shall be maintained with sufficient power and efficiency when applied to bring such motor vehicle, when running at the following speeds to a full stop from the point where the brake is applied, within the following distances: 10

miles per hour, 7 feet; 20 miles per hour, 25 feet; 30 miles per hour, 56 feet."

All of the evidence must be construed, if this can reasonably be done, to support the judgment, and, inasmuch as the jury returned its verdict in plaintiff's favor, the evidence of plaintiff's witnesses should be so construed, even though the same is in conflict with defendant's evidence.

Plaintiff called as a witness a young man nineteen years of age, who testified that he was proceeding northerly on South Broadway in an automobile and was about three blocks southerly from the intersection of South Broadway and Wesley avenue when the panel truck driven by defendant in a northerly direction passed him. At the time defendant's automobile passed the witness it was raining hard, and witness' automobile was being driven "at least 25 miles an hour." The witness testified that defendant was driving at least thirty miles per hour and that in the distance of three blocks defendant's car had gained about three-fourths of a block. When the witness approached the intersection, his attention was attracted to a loaf of bread laying in the street northerly from the north crosswalk at the intersection, and immediately after this observation he came to a complete stop because he saw that there had been an accident, and a man was lying in the street. He testified that he stopped alongside of the panel truck that had passed him previously and that the place where the injured man was lying was approximately fifty to one hundred feet north of the intersection. On cross-examination this witness testified that defendant's automobile was double parked near the center and on the easterly side of Broadway and that the loaf of bread was right north of the northerly crosswalk at the intersection, and at the time when witness observed defendant's truck double parked, he did not observe any person other than the defendant at the scene of the accident.

While there is no positive evidence that decedent was

carrying an umbrella, nevertheless it seems to be conceded by defendant's counsel that he was, and this fact is the basis of some of their argument in their brief.

Another witness called by plaintiff testified that he came to the scene of the accident shortly after its occurrence and parked his automobile at the northerly side of the intersection and on the east side of Broadway, and that when he returned to his automobile he found the handle of an umbrella about fourteen or fifteen feet north of the north crosswalk. The remaining part of the umbrella was not found.

' Another witness called by plaintiff testified that decedent, about 7:15 P. M., on the night of the accident, purchased a loaf of bread at his grocery store, located on the southwest corner of the intersection of Wesley avenue and South Broadway.

At the conclusion of plaintiff's evidence in chief, defendant interposed a motion for dismissal or nonsuit, which was denied, and, at the conclusion of all of the evidence, he moved for a directed verdict, which also was denied.

Defendant's specifications of points are: 1. The decedent was guilty of contributory negligence as a matter of law, and the motion of defendant below for a directed verdict should have been granted; 2. there was insufficient evidence to sustain the verdict of the jury; 3. the court erred in submitting the question of last clear chance to the jury; 4. error in refusing to submit interrogatories; 5. error in refusing to give tendered instructions; 6. misconduct of the jury.

█ 1. This specification is predicated entirely upon the assumption that decedent was one hundred or more feet north of the north crosswalk of the intersection at the time he was struck by defendant's automobile; therefore reliance is placed upon subsection (c) of section 15 of the ordinance hereinbefore set forth. Defendant has failed to give heed to this entire subsection, quoting only a part thereof. This subsection does not give an absolute and

unqualified right of way to an autoist when a pedestrian is crossing between intersections, but provides that when a pedestrian is so doing he shall yield the right of way to autoists upon the highway, *"provided, that this provision shall not relieve the driver of a vehicle from the duty to exercise due care for the safety of pedestrians."* There is either direct or circumstantial evidence warranting the jury in finding that decedent was in the proper crosswalk at the time of the accident, for a short distance north of the crosswalk was found a loaf of bread, and decedent had immediately previously thereto purchased a loaf of bread at a grocery store on the southwest corner of the intersection; there was an umbrella handle found a few feet north of the crosswalk, and while, as we have said, there was no direct evidence that decedent was carrying an umbrella, nevertheless defendant in his brief says, "The facts in this case disclose that the deceased was no doubt carrying an umbrella, for even the plaintiff herself produces evidence of finding an umbrella handle in the street." There was direct evidence that defendant was exceeding the speed limit of twenty-five miles an hour; there was direct evidence of the defendant himself that at times he could not see more than twenty feet in front of him, and that, while driving at that rate of speed, it would take thirty to thirty-five feet in which to stop his car. There was direct evidence that defendant could not stop his car within the range of his vision. There was no evidence, positive or circumstantial, that decedent had not stopped to yield the right of way to defendant. There was direct and undisputed evidence that the left headlight on defendant's automobile was broken, and its left fender and radiator dented by reason of coming in contact with decedent when defendant swerved his automobile to the left and thereby it hit decedent. There was direct and undisputed evidence that there was ample room to decedent's right within which defendant could have driven without injury to decedent.

We have repeatedly held that where facts disclosed by

direct or circumstantial evidence are before the jury and are disputed or when reasonable inferences to be drawn therefrom may differ, it is error to grant a motion for dismissal or nonsuit or to direct a verdict; that, under these circumstances, the question is clearly one to be submitted to the jury for determination. *Sprague v. Herbel,* 90 Colo. 134, 6 P. (2d) 930; *Publix Cab Co. v. Phillips,* 98 Colo. 542, 58 P. (2d) 486; *Stahl v. Cooper,* 117 Colo. 468, 190 P. (2d) 891. Assuming, as defendant would have us do, that decedent was traversing South Broadway between intersections in violation of applicable traffic ordinances, nevertheless, a factual question for the jury's determination was presented, and it was its prerogative, with competent evidence before it and proper instructions, to determine whose negligence was the proximate cause of the accident and consequent injuries.

2. There appears in the record irreconcilable differences in the testimony of the witnesses for the parties hereto, some of which is direct and some circumstantial. There was sufficient competent evidence before the jury which, if believed by it, warranted a verdict in plaintiff's favor. Under such circumstances its findings will not be disturbed on review.

3. It is urged by defendant that error was committed in submitting the doctrine of last clear chance for the jury's consideration. Generally it may be said that under this doctrine a plaintiff's negligence does not preclude a recovery for defendant's negligence where it appears that defendant, by exercising reasonable care and caution, might have avoided injurious consequences to plaintiff, notwithstanding his negligence, and we have held that this rule is not limited in its application to cases where the peril of the person injured was actually discovered by the one inflicting the injury, and we have extended the doctrine of last clear chance to cases where plaintiff's peril could have been discovered by the exercise of reasonable care and caution upon defendant's

part. *Nichols v. Chicago, Burlington & Quincy R. R. Co.,* 44 Colo. 501, 98 Pac. 808; *Fabling v. Jones,* 108 Colo. 144, 114 P. (2d) 1100; *Woods v. Siegrist,* 112 Colo. 257, 149 P. (2d) 241.

It might well be that if decedent was in the crosswalk at the intersection at the time of the accident—and there was evidence from which the jury might have reached this conclusion—the doctrine of last clear chance would be inapplicable. It is the contention of defendant, however, that decedent at the time of the accident was approximately one hundred feet north of the northerly crosswalk at the intersection, and, because of the provisions of the traffic ordinance, supra, it is contended that he was guilty of contributory negligence which precluded plaintiff's recovery. Unless there was negligence on decedent's part, the doctrine of last clear chance is inapplicable. *Freeman v. Schulz,* 81 Colo. 535, 256 Pac. 631.

A negligent plaintiff who has placed himself in a perilous position from which he cannot extricate himself in time to avoid an accident, may recover from a negligent defendant who is aware of plaintiff's perilous position or who, by the exercise of reasonable care, caution and vigilance, might have become aware of it, and thereafter, by the exercise of reasonable care and caution, could have averted the accident, but failed to do so. In order to avail oneself of the last clear chance doctrine, one proceeds upon the assumption of negligence on his part, and notwithstanding which he takes the position that the negligence of the other party to the accident is the proximate cause of the damages sought to be recovered. In other words, the plea of last clear chance is not available unless contributory negligence is present. The plea of last clear chance is comparable to that of confession and avoidance. Here, for the purpose of the plea of last clear chance, plaintiff admits that decedent was guilty of contributory negligence in crossing South Broadway between intersections; notwithstanding

which her counsel contends that the husband's death was proximately caused by defendant's negligence in driving his automobile at a negligent speed under existing weather conditions when his visibility at times was limited to twenty feet, and when, within such distance, he was unable to stop his automobile and avert an accident. The traffic code provides for a maximum speed, but it is not a license to maintain that speed at all times and under all conditions, and certainly never has been so construed as to authorize an autoist to drive at a speed which may result in injury to others who may be upon the highway. To do so is negligence. Defendant's uncontradicted evidence is that he swerved to the left when he first discovered plaintiff's husband immediately in front of his radiator, and, again, he said that upon discovering plaintiff's husband he swerved his car to the left, thereby coming in contact with the husband and breaking his left headlight, denting his front fender, and causing some damage to his radiator. He testified that he was driving his car under unfavorable weather conditions with a vision of twenty feet, but that he failed to see plaintiff's husband until the very instant when his car struck him. Defendant also testified that he was driving with his left front wheel in the center of the north-bound car track, and that there ample room for him to have averted the accident if he had turned to the right instead of swerving to the left. There is also evidence that a young man following defendant's automobile, traveling at a speed of twenty-five miles per hour, traversed two and a fourth blocks while defendant had driven his automobile three full blocks. Assuming the correctness of his testimony, it is a matter of mathematical calculation to determine that defendant was traveling in excess of thirty-three miles per hour. This witness testified that defendant was driving at least thirty miles per hour.

We believe the settled law in Colorado, relative to the doctrine of last clear chance, is that it becomes

applicable to a defendant when the plaintiff is guilty of negligence, but this negligence will not relieve defendant of liability if he knew, or in the exercise of reasonable care should have known, the peril in which plaintiff had negligently placed himself and had a clear chance, notwithstanding such negligence on plaintiff's part, to save him from injury. Defendant's failure to avail himself of such last clear chance is negligence which becomes the proximate cause of plaintiff's injury. *Publix Cab Co. v. Phillips, supra; Wendelin v. Ross*, 99 Colo. 365, 62 P. (2d) 1157; *Independent Lumber Co. v. Leatherwood*, 102 Colo. 460, 79 P. (2d) 1052; *Denver Tramway Corp. v. Perisho*, 105 Colo. 280, 97 P. (2d) 422; *Woods v. Siegrist, supra.*

Under all the evidence disclosed by the record in this case, there was no error in submitting to the jury the question arising from the application of the doctrine of last clear chance.

4. Defendant presented to the court, and requested the court to submit to the jury, certain interrogatories, which the court declined to do. This becomes the basis of one of the specifications of points. Summarized, the interrogatories would have required the jury to answer the following: 1. Were you able to determine where the accident happened? 2. Was Mr. Archibald attempting to cross the street? 3. Was Mr. Lambrecht guilty of negligence? 4. Was Mr. Archibald guilty of contributory negligence? 5. Did Mr. Archibald's negligence, if any, continue up to the time of the accident? 6. Could Mr. Lambrecht have avoided the accident if he discovered, or should have discovered, the peril of Mr. Archibald? The request for the submission of these interrogatories was based upon Rule 49, R.C.P. Colo., the most casual reading of which will clearly disclose that the determination of the submission of interrogatories is discretionary and not mandatory. While in the instant case answers to the interrogatories might have simplified the issues, nevertheless we cannot say

that the court's refusal to submit them to the jury constituted an abuse of discretion of which defendant can successfully complain.

■ 5. Defendant tendered six instructions, to the refusal of the court to give the same to the jury exceptions were saved. Two of the instructions were based upon the last clear chance doctrine which, of course, defendant contended was not an issue in the case. The court instructed the jury on the last clear chance doctrine as follows:

"No. 12

"The Court instructs the Jury that a plaintiff who has negligently placed himself in a situation of imminent peril, and is either unconscious of his peril, or unable to avoid the danger, or both, may nevertheless recover damages of the defendant who negligently inflicts injury, if the defendant could have avoided the injury after he discovered or by the exercise of reasonable care could have discovered the plaintiff's peril.

"No. 13

"You are instructed that if there was a mere possibility that defendant might have avoided the accident, and that possibility rests upon split seconds, this is not enough to meet the rule of Last Clear Chance. Such circumstances may present a last, but not a clear chance to avoid the accident. In order for the defendant to be held liable under the Last Clear Chance theory, you must not only find that he had the last chance, but the last clear chance, to avoid the accident."

We consider these instructions to be a fair statement of the last clear chance doctrine and sufficient to fully advise the jury in its determination of its applicability to the factual situation presented.

Without particularizing other tendered instructions, we hold that no error was committed in their refusal because they were inapplicable to the factual situation appearing or would have negatived the last clear chance

instructions which we have held were properly given to the jury for its guidance.

6. The sixth specification pertains to misconduct on the part of the jury, resulting in an excessive verdict which allegedly was based upon passion, bias and prejudice. This purported misconduct is disclosed by an affidavit attached to defendant's motion to set aside the verdict and judgment and for a new trial. According to the affidavit, some of the jurors stated that they were influenced by the fact that defendant carried insurance which protected him against any judgment rendered in the case for the plaintiff, and one or more of them stated, according to affiant, that she refused to consent to the verdict until after she learned that defendant's liability was covered by insurance. It is unfortunate that matters of this kind influence jurors in the performance of their sworn duty, but we have held that it is a general rule followed in this jurisdiction that a verdict cannot be impeached by the affidavit of a member of the jury; consequently, that arguments, discussions and reasons advanced by jurors, while considering their verdicts, may not be shown by affidavits to impeach a verdict returned by them. *Sowder v. Inhelder*, 119 Colo. 196, 201 P. (2d) 533, and decisions therein cited.

We find no prejudicial error which would justify a reversal of the judgment herein; accordingly, it is affirmed.