Joseph B. FRENCH, Appellant,

v.

Maurice Joseph MOZZALI et al., Appellees.

Court of Appeals of Kentucky.

March 8, 1968.

---

J. W. Jones, Louisville, for appellant.

Henry V. B. Denzer, Hogan, Taylor, Denzer & Bennett, Louisville, for appellees.

HILL, Judge.

At the conclusion of all the evidence, the trial court directed a verdict for appellee-defendant in appellant-plaintiff's suit for personal injuries received when struck by appellees' automobile while appellant was walking with his back to traffic in violation of KRS 189.570(6). The propriety of this ruling is the only question presented on this appeal. On previous trial the court likewise directed a verdict for the defendant but granted plaintiff a new trial.

On December 11, 1963, at about 7:15 p. m., when it was dark and "drizzling" rain, appellant, a dance instructor on his way to classes, alighted from a city bus on the southwest corner of Hawthorne at its intersection with Bon Air Avenue. Hawthorne runs east and west; Bon Air runs north and south.

Appellant crossed Hawthorne intending to proceed north on Bon Air. Seeing a concrete abutement and an open ditch on his left side of Bon Air and after looking northwardly on Bon Air, he concluded the walking conditions were better on his right side of Bon Air. So he crossed Bon Air at its intersection with Hawthorne and proceeded along the edge of the blacktop (there being no sidewalk) two or three steps when Joseph Edward Mozzali, sixteen year and four month old son of Maurice Joseph and Marjorie M. Mozzali, came along in an automobile also traveling north on Bon Air. Young Mozzali stated that as he approached Hawthorne, the bus from which appellant alighted was swinging wide in making its right turn to go south on Bon Air, casting its lights in his eyes and causing him to keep over on his extreme side of the blacktop and to "slow down." Mozzali continued, crossing Hawthorne and struck appellant at a point "two or three steps" north of the intersection. Appellant sustained serious and perhaps disabling injuries considering his profession. There was a streetlight near the point of impact, and appellant was wearing a light colored overcoat.

Appellant testified that his left foot was "a foot to a foot and a half off the paved portion of the street." Appellees argue that appellant meant his right foot was a foot to a foot and a half off the blacktop. A reading of all his evidence shows clearly that he meant he was off the blacktop a foot to a foot and a half.

The statute which fixes the duty and responsibility of a pedestrian traveling on a highway also pertains to one traveling "along" the highway. KRS 189.570(6) provides that: "Pedestrians shall at all times, when walking on or along a highway, walk on the left side of the highway."

If we disregard the uncontradicted testimony that appellant was in or mighty close to an unmarked crosswalk at an intersection, we would be obliged to hold that he was walking "along" the highway in

violation of the statute quoted above and was therefore contributorily negligent to such an extent he could not recover, and that such contributory negligence was the proximate or a contributing cause of his injuries. Cf. Saddler v. Parham, Ky., 249 S.W.2d 945 (1952). A pedestrian is walking along the highway within the meaning of the statute when he walks along the shoulder or berm of the hard-surfaced portion in the area into which the bodies of wide vehicles extend and on which other vehicles may be expected to travel either by reason of being forced off the hard surface by another vehicle, or by inadvertence while dozing, or looking off, or for any other reason. It is difficult, however, to disregard appellant's position with relation to the unmarked crosswalk in determining whether the question of appellant's contributory negligence and proximate cause was a court or jury question.

KRS 189.570(2) is quoted:

"Except as provided in subsection (4) where traffic control signals are not in place or in operation the operator of a vehicle shall yield the right of way to a pedestrian crossing the roadway within any marked cross walk or within any unmarked cross walk at an intersection. If necessary in order to yield the right of way, the operator shall slow down or stop."

Appellant's evidence is not definite and certain as to the course he followed in crossing Bon Air and up to the point of impact with appellees' automobile. However, the evidence is uncontradicted that as he proceeded across Bon Air, he crossed at the unmarked crosswalk where he had a right to cross and where he had the right of way between himself and appellees' vehicle. As he crossed Bon Air, he waved to the bus driver and the driver waved back. Appellant saw the wide swing (admitted by appellees) of the bus, running interference for him as he crossed Bon Air. Appellant said after he turned north on Bon Air he had taken two or three steps (2½ to 3 feet each) when he was struck. The record is silent as to whether appellant "cut the corner" of the intersection in order to save a few steps (which is done by a large number of pedestrians), but the record is uncontradicted that he had not gone more than 9 feet nor less than 5 feet from the crosswalk when struck. Whether he was within the protected area of the crosswalk at the time he was struck is the difficult question. There being no sidewalk on Bon Air, was he required to continue a straight line at the crosswalk until he got across the street or did he have a right to "cut the corner" somewhat and gradually leave the protected (for the pedestrian) area covered by the statute? Certainly he had no right to stay on the hard surface for an unreasonable distance or time.

The statute means that the pedestrian, although having the right of way, must exercise ordinary care for his own protection both in keeping a lookout for oncoming vehicles and in getting on across the street and out of danger. However, the taking of "two or three" steps is a short distance requiring only about two seconds.

This court recently said in Frank v. Silvers, Ky., 414 S.W.2d 887, 892:

"As it is common knowledge, every motorist is presumed to know that pedestrians do use the margins of public streets and highways as avenues of travel, that to some degree at least all roadways are so used, and that when such pedestrians come to intersections they must cross. The motorist's duty in approaching an intersection cannot be made to depend on the number of pedestrians who customarily cross there, because that often will be beyond his knowledge. His duty and the corresponding right of the pedestrian must be premised on the existence of the intersection, whether it be used by few or many."

It seems reasonable to conclude since there is at every intersection not

having a marked crosswalk an unmarked crosswalk, then this crosswalk should consist of that portion of the roadway at the intersection a pedestrian would be required to travel in crossing from curb to curb for a *reasonable width* to allow pedestrian travel. Cf. Frank, supra; Shea v. Bruner, Ky., 426 S.W.2d 482 (decided October 13, 1967); and Fenwick v. Daugherty, Ky., 418 S.W.2d 243.

Although appellant was walking "along" the highway in violation of KRS 189.570 (6), he was in the general area of a crosswalk. The presence of the city bus making a turn from Hawthorne onto Bon Air, observed by appellant, placed appellee on notice that persons may have gotten off the bus and were in the crosswalk. Appellant was at or near the end of the crosswalk in a light colored overcoat and near a streetlight. Appellee's admission that he never saw appellant until he appeared to "come down out of the sky," is evidence he was not keeping a lookout commensurate with the circumstances.

With respect to the presence of the city bus as it bears upon appellee's duty to keep a lookout, it was said in Strode v. Campbell, 311 Ky. 525, 224 S.W.2d 673, 675:

"[I]f the identity of the bus was discovered by the driver of the automobile or by the exercise of ordinary care could have been discovered by her, it was her duty to anticipate the discharge of a passenger and the possibility that the passenger would cross the highway, in which event it was Mrs. Campbell's further duty to slacken her speed to such an extent that she would have reasonable control of her automobile to avoid its colliding with a pedestrian on the highway, and additionally to sound her horn as a warning to any person who might have been discharged from the bus at that point."

■ We recognize that the circumstances listed above pertain more to appel-lee's duties than to appellant's, but they are significant on the question of appellee's lookout duty and to anticipate the presence of appellant in a position of peril.

■ It is concluded that the trial court erred in directing a verdict for appellee. The case should have been submitted to the jury on a last clear chance instruction. Appellee Mozzali testified he did not see French until a split second before striking him, when French appeared to "fall out of the sky." In discussing last clear chance in *Frank,* supra, this court said:

"Even if it were conceded that Silvers was contributorily negligent as a matter of law, we are of the opinion that he was nevertheless entitled to have the question of last clear chance submitted to the jury."

It is true Frank saw Silvers some time before the accident and knew he was somewhere in the area; the rule should be the same where the motorist should have known of the presence of the pedestrian.

In Riley v. Hornbuckle, Ky., 366 S.W.2d 304, 307 (1963), this court said:

"[T]he last clear chance issue should have been submitted to the jury. If it is to have any real effect as a humanitarian policy, we think the doctrine must be held applicable to the situation in which (as in the Saddler case) there is evidence that a pedestrian who was within the intended path of travel of an oncoming vehicle remained in that area of peril, with nothing to prevent the driver's seeing him, long enough for the vehicle to move a distance of several hundred feet. When this occurs, there is usually a point in time at which the curtain closes on the ability of the pedestrian to get out of the way of a faster-moving vehicle while it yet remains open for the driver to shift his course. Whether that interim constitutes a 'clear' chance ought to be left to the jury."

Found in Restatement of the Law, 2d, Torts, § 479, is the rule we invoke herein. It reads:

"A plaintiff who has negligently subjected himself to a risk of harm from the defendant's subsequent negligence may recover for harm caused thereby if, immediately preceding the harm,

\*     \*     \*     \*     \*     \*

"(b) the defendant is negligent in failing to utilize with reasonable care and competence his then existing opportunity to avoid the harm, when he

\*     \*     \*     \*     \*     \*

"(ii) would discover the situation and thus have reason to realize the peril, *if he were to exercise the vigilance which it is then his duty to the plaintiff to exercise.*" (Our emphasis.)

The author's comments under the above rule from Restatement of the Law, supra, contains this statement:

"As to this see subclause (ii), which states the rule which determines the plaintiff's right to recover when the defendant, although not knowing of the plaintiff's situation, *should have discovered it.*" (Our emphasis.)

The rule herein applied was followed in Lambrecht v. Archibald, 119 Colo. 356, 203 P.2d 897, a case about as similar factually as it is possible to envision. In *Lambrecht,* the pedestrian was killed while crossing at an unmarked crosswalk at the intersection of South Broadway and Wesley Avenue. Colorado law with respect to rights and duties of autoist and pedestrian is strikingly similar to our own. The court said in *Lambrecht,* at page 901:

"Generally it may be said that under this doctrine a plaintiff's negligence does not preclude a recovery for defendant's negligence where it appears that defendant by exercising reasonable care and caution, might have avoided injurious consequences to plaintiff, notwithstanding his negligence, and we have held that this rule is not limited in its applica-

tion to cases where the peril of the person injured was actually discovered by the one inflicting the injury, and we have extended the doctrine of last clear chance to cases where plaintiff's peril could have been discovered by the exercise of reasonable care and caution upon defendant's part."

The presence of the city bus at the intersection, its observation by Mozzali, the close proximity of French to the crosswalk, the streetlight nearby, and the fact that French was wearing a light colored overcoat presented a factual situation in which we think a jury could find that Mozzali should have discovered the peril of French in time to swerve and avoid striking him. There was little or nothing French could do at this time to extricate himself from such peril.

It is concluded the judgment should be reversed with directions to grant appellant a new trial consistent herewith.

WILLIAMS, C. J., and MILLIKEN, OSBORNE, PALMORE, and STEINFELD, JJ., concur.

MONTGOMERY, J., dissents.